Sandra Smothers **BARTOSH, Individually and as Administratrix of the Estate of Jose De Alminana Smothers, Appellant,**

v.

**GULF HEALTH CARE CENTER–GALVESTON and Ecolab, Inc., Appellees.**

No. 14–04–00715–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 11, 2005.

Anthony Paul Griffin, Galveston, for appellant.

Alana K. Bassin, Richard G. Morgan, Minneapolis, MN, Elizabeth Kamin, Elizabeth Volmert, Houston, Eric Gordon Walraven, G. Michael Stewart, Julia Fields Pendery, Dallas, for appellees.

Panel consists of Chief Justice HEDGES, Justice ANDERSON, and Senior Justice MIRABAL.*

## OPINION

ADELE HEDGES, Chief Justice.

Jose de Alminana Smothers was attacked by fire ants while in the care of a nursing home facility run by Gulf Health Care Center–Galveston. She subsequently died from other causes. Her daughter, Sandra Smothers Bartosh, sued Gulf Health and Ecolab, Inc., the company that provided pest protection services at the property. Bartosh sued in her individual capacity and as administratrix of her mother's estate. She alleged medical malpractice and premises liability against Gulf Health and negligence against Ecolab. The trial court granted summary judgment favoring Gulf Health on the malpractice claims prior to trial and granted a directed verdict favoring Ecolab at the close of the plaintiff's case-in-chief. Con-

* Senior Justice Margaret G. Mirabal sitting by assignment.

sequently, only the premises liability claim against Gulf Health was submitted to the jury. The jury found Gulf Health liable and awarded $136,000 to Bartosh. The trial court entered final judgment in accordance with the jury's findings.

On appeal, Bartosh contends that the trial court erred in excluding (1) testimony from Texas Department of Human Resources personnel together with a report generated by those personnel, (2) testimony of plaintiff's medical expert, and (3) photographs of Smothers. Bartosh further contends that (4) the cumulative effect of the court's errors was to improperly limit the jury's assessment of damages, and (5) the trial court erred in granting a directed verdict favoring Ecolab. Gulf Health raises a cross-point asserting that because it has already tendered payment of the damages to Bartosh, this court should not award her any additional post-judgment interest after the date of tender. We affirm.

## I. Background

On August 5, 2001, Jose de Alminana Smothers was taken to the University of Texas Medical Center at Galveston because she had become unresponsive at the Gulf Health facility in Galveston. Smothers was 82 at the time and was at the facility because she was suffering from end stage emphysema, among other ailments. While at the hospital, it was discovered that she had fire ants crawling on her. Although the evidence was somewhat inconsistent regarding how many ant bites she had sustained, she apparently had suffered dozens of bites to her legs. She was unresponsive at the time of admission but was observed to be moaning in apparent pain. She was treated at the hospital and discharged on August 24, 2001. On August 26, she died at home.

Her daughter, Sandra Bartosh, sued Gulf Health, alleging initially that it committed medical malpractice resulting in wrongful death by failing to prevent the fire ant attack. Bartosh subsequently amended her pleading to allege premises liability against Gulf Health. The trial court granted Gulf Health's motion for summary judgment in regard to the medical malpractice and wrongful death actions. Bartosh also sued Ecolab, alleging that it had committed negligence in the provision of pest control services at the facility. At the close of the plaintiff's case, Ecolab moved for a directed verdict based on Bartosh's failure to prove that Ecolab had a duty toward Smothers or that it had breached that duty. The trial court granted the directed verdict.

Also during trial, the court denied the admission of certain evidence about which Bartosh complains on appeal. First, the court refused to allow a report prepared by Texas Department of Human Resources (TDHR) personnel; the court additionally refused to allow the employees themselves to testify. The report included several unattributed statements regarding conditions and events at the Gulf Health facility and discussed the possibility of statutory and code violations at the facility. Second, the court refused to allow Bartosh's medical expert, Dr. John Messmer, to testify. Messmer was expected to testify that the ant attack may have explained the deterioration in Smothers's health and may have contributed to her death. Lastly, the court refused to allow certain of the photographs offered to show the injuries sustained by Smothers. Other photographs were admitted showing the area subject to the ant bites. Some of the excluded photographs also showed areas of bed sores on Smothers's body that were not part of this litigation.

The jury charge was comprised of only two questions. The first was a general question regarding premises liability, and in response, the jury found that Gulf Health's negligence proximately caused Smothers's injuries. The second question was on damages and included only three elements: (a) physical pain and mental anguish, (b) disfigurement, and (c) medical care. The jury awarded $136,000 in aggregate for the three elements. The trial court entered judgment in accordance with the verdict, and also awarded costs and prejudgment interest, for a total judgment of $154,592.41 plus post-judgment interest.

## II. Issues Relating to Gulf Health

### A. TDHR Evidence

■ In her first issue, Bartosh contends that the trial court erred in excluding testimony from TDHR personnel as well as a report generated by those personnel. Generally, the decision to admit or exclude particular evidence rests within the sound discretion of the trial court. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995); *Frazier v. Havens*, 102 S.W.3d 406, 410 (Tex. App.-Houston [14th Dist.] 2003, no pet.). To obtain reversal of a judgment based upon the admission or exclusion of particular evidence, the appellant must show that (1) the trial court erred in admitting or excluding the evidence, and (2) such error was reasonably calculated to cause and probably did cause rendition of an improper judgment. Tex.R.App. P. 44.1; *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); *Frazier*, 102 S.W.3d at 410. To establish harm (*i.e.*, that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment), the appellant must demonstrate that the excluded evidence was both controlling on a material issue and not cumulative of other evidence.

*Williams Distrib. Co. v. Franklin*, 898 S.W.2d 816, 817 (Tex.1995).

■ Because Bartosh received a verdict and a judgment that Gulf Health's negligence proximately caused Smothers's damages, she cannot show harm from the exclusion of evidence related solely to causation, even if its exclusion was error. *See Holeman v. Landmark Chevrolet Corp.*, 989 S.W.2d 395, 402 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (holding plaintiffs could not show harmful error in exclusion of evidence regarding knowing conduct where jury found in their favor on that issue); *Morriss v. Centex Paving Co.*, 348 S.W.2d 790, 793–94 (Tex.Civ.App.-Eastland 1961, writ ref'd n.r.e.) (holding plaintiffs could not show harmful error in exclusion of evidence regarding defendant's negligence where jury found in their favor on that issue). Although Bartosh globally asserts that all evidence relevant to causation is also necessarily relevant to damages, she cites no authority for this proposition and offers no explanation as to how conditions at the property discussed in the TDHR report and the prospective testimony of the TDHR employees contributed to Smothers's physical pain and mental anguish, her disfigurement, or the costs of her medical care. *See Manon v. Solis*, 142 S.W.3d 380, 393 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (finding claim based on exclusion of evidence was without merit because appellant failed to explain how the excluded evidence was controlling on a material issue). The jury, in effect, found that Gulf Health's negligence allowed the ant attack to occur. In the absence of a charge submission on exemplary damages, it is difficult to fathom how additional evidence related to causation could increase the amount of damages, as those elements were submitted to the jury. The jury charge did not include a submission on

exemplary damages.[1] Consequently, Bartosh cannot show harm in the trial court's exclusion of causation evidence from TDHR personnel or reports.

Regarding evidence relating to damages, Bartosh points only to statements in the TDHR report and in the witness's deposition testimony that when Smothers was transferred to the hospital she was a dependent, unresponsive female with multiple ant bites. These observations, apparently taken from a review of hospital records, were also reported at trial by Bartosh herself, by medical personnel who treated Smothers, and by the photographer who was called in to take photographs of Smothers; the statements were also contained in the hospital records that were admitted at trial. The exclusion of merely cumulative evidence cannot constitute harmful error. *Nissan Motor Co. Ltd. v. Armstrong,* 145 S.W.3d 131, 144 (Tex.2004).

Bartosh has failed in her burden of demonstrating that the excluded TDHR evidence was both controlling on a material issue and not cumulative of other evidence. *See Williams Distrib. Co.,* 898 S.W.2d at 817; *Manon,* 142 S.W.3d at 393. Thus, even if the exclusion of the TDHR evidence was error, Bartosh cannot show that it was reasonably calculated to cause and probably did cause rendition of an improper judgment. Tex.R.App. P. 44.1; *Gee,* 765 S.W.2d at 396. Her first issue is overruled.

### B. Plaintiff's Expert

In her second issue, Bartosh contends that the trial court erred in excluding the testimony of her medical expert, Dr. John Messmer. Bartosh maintains that the omission of Messmer's testimony unfairly limited her proof of damages. Specifically, Bartosh expected Messmer to testify that the ant attack explained why Smothers's health went into a sudden decline requiring her transfer to the hospital and that it contributed to her death.

Under Rule 702 of the Texas Rules of Evidence, the proponent of expert testimony must establish that (1) the expert is qualified to render an opinion on the subject matter, (2) the testimony is relevant to the issues in the case, and (3) it is based upon a reliable foundation. Tex.R. Evid. 702; *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 556 (Tex.1995). The trial court has the responsibility for making the preliminary determination as to whether the proponent has met these requirements. Tex.R. Evid. 104(a); *Robinson,* 923 S.W.2d at 556. We review a trial court's decision to admit or exclude expert testimony under an abuse of discretion standard. *K–Mart Corp. v. Honeycutt,* 24 S.W.3d 357, 360 (Tex.2000).

Gulf Health objected to Messmer's proposed testimony based on several theories, including that it was not based upon a reliable foundation. A witness who has been identified as an expert often appears inherently more credible than a lay witness, and a jury may be readily swayed by the designation. *See Robinson,* 923 S.W.2d at 553. Consequently, "trial judges have a heightened responsibility to ensure that expert testimony show some indicia of reliability." *Id.* Although the requirements of qualification, relevance, and reliability set forth in *Robinson* apply to all expert testimony, the specific factors enumerated in that opinion do not neces-

---

1. In issue five, Bartosh claims, among other things, that the trial court erred in striking portions of her Fifth Amended Petition, including those requesting exemplary damages.

As discussed in detail below, Bartosh fails to demonstrate that the court erred in striking those sections of the pleading.

sarily apply in every case. *See Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 720–21, 726–27 (Tex.1998); *Robinson,* 923 S.W.2d at 557.[2] In *Gammill,* instead of using the *Robinson* factors, the court assessed reliability based on the degree of analytical gap between the data examined and the opinion proffered. 972 S.W.2d at 727; *see also Taylor v. Am. Fabritech, Inc.,* 132 S.W.3d 613, 619 & n. 10 (Tex. App.-Houston [14th Dist.] 2004, pet. denied) (stating that under *Gammill,* court must determine whether the expert testimony is based on a reliable foundation); *In re D.S.,* 19 S.W.3d 525, 529–30 (Tex. App.-Fort Worth 2000, no pet.) (following *Gammill* in analyzing expert medical testimony regarding causation of injuries).[3] Specifically, the *Gammill* court found that the expert's failure to show how his observations supported his conclusions rendered his testimony unreliable, stating that the trial court was not required "to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." 972 S.W.2d at 727 (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)).

Messmer gave two depositions in this lawsuit. He opined that the fire ant attack might explain why Smothers went into a sudden decline requiring her transfer to the hospital and that it may have contributed to her death.[4] He specifically offered two possible scenarios regarding the affect of the ant bites on Smothers. First, he theorized that the attack could have triggered an immune system response that lowered her blood pressure and, in turn, exaggerated preexisting skin lesions. Second, he suggested that the ants may have caused a bacterial infection, such as by streptococcus, to be introduced into Smothers's body causing a sudden deterioration in the skin lesions and possibly causing her to go into anaphylactic shock. He additionally suggested that she may have had an allergic reaction to ant toxins. He based these conclusions on his medical training and experience and his review of hospital and facility records, photographs

**2.** The expressly nonexclusive factors listed in *Robinson* are as follows:
(1) the extent to which the theory has been or can be tested;
(2) the extent to which the technique relies upon the subjective interpretation of the expert;
(3) whether the theory has been subjected to peer review and/or publication;
(4) the technique's potential rate of error;
(5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and
(6) the non-judicial uses which have been made of the theory or technique.
923 S.W.2d at 557.

**3.** *But cf. Coastal Tankships, U.S.A., Inc. v. Anderson,* 87 S.W.3d 591, 600–05 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (en banc) (holding that medical causation testimony fell outside realm of "hard science" and applying factors from *Nenno v. State,* 970 S.W.2d 549 (Tex.Crim.App.1998), *overruled on other grounds by State v. Terrazas,* 4 S.W.3d 720, 727 (Tex.Crim.App.1999), for determining reliability of expert testimony in the "soft" sciences). The *Nenno* court pronounced that in addressing fields of study outside the hard sciences, the appropriate questions are: (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and utilizes the principles involved in the field. 970 S.W.2d at 561. Neither the Fourteenth Court of Appeals nor the Texas Supreme Court has adopted the *Nenno* analysis for use in civil cases, and we do not see the need to do so in the present case.

**4.** Messmer further asserted that Gulf Health violated the applicable standard of care by allowing Smothers to be attacked by fire ants. However, Bartosh's medical malpractice claim was eliminated by summary judgment, and she does not claim that this assertion is relevant to her premises liability claim that went to the jury.

of Smothers, and depositions taken in this case.

Messmer described himself as a family physician and a specialist in geriatric medicine. He briefly explained his training in geriatrics and his certification in that field. Although he generally stated that he learned about fire ants in medical school, he did not profess to have any specialized training relating to insects, the effect of insect bites on health generally, or the effect of insect bites on geriatric patients. It is also important to note that Messmer said he did not review any literature pertaining to insect bites or the possible effects of insect bites on the health of patients generally or geriatric patients specifically. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 500–501 (Tex. 2001) (noting expert's extensive review of relevant literature in finding trial court did not abuse its discretion in admitting expert's testimony); *Wiggs v. All Saints Health Sys.*, 124 S.W.3d 407, 413 (Tex. App.-Fort Worth 2003, pet. denied) (discounting medical expert's review of only two articles). Messmer claimed specialized training and knowledge regarding geriatric patients but not in regard to insect attacks or the effect of insect attacks on such patients.

Regarding his experience, Messmer testified that a large percentage of his patients are geriatric. He also stated that when he worked in South Carolina in the early eighties, he treated 20 to 30 patients for fire ant bites but that none of the patients was geriatric, none developed related infections or went into shock, and none died from the attacks. He has not treated any patients for fire ant bites since that time. Although Messmer is experienced in the field of geriatrics, he has only slight experience regarding fire ant bites and no experience dealing with the possible complications from fire ant bites that

he stated may have affected Smothers. *See Wiggs*, 124 S.W.3d at 412–13 (emphasizing medical expert had only treated one patient for specific condition involved in lawsuit in holding trial court did not abuse its discretion in excluding expert's testimony); *State Farm Lloyds v. Mireles*, 63 S.W.3d 491, 499 (Tex.App.-San Antonio 2001, no pet.) ("Certainly, if [an expert] is primarily depending on his experience to support his opinion, he would have to have seen it more than once.").

Furthermore, Messmer's testimony is replete with references to the speculative nature of his analysis. He stated that he was hired to speculate on what may have caused Smothers's health to deteriorate, that he gave his best speculation regarding possible causes, and that he was just offering an opinion on what might have happened. *See Robinson*, 923 S.W.2d at 559 (stating that the fact that an opinion was formed for the purpose of litigation does not automatically render it suspect but does make it more likely to be biased toward a particular result). He said he *felt* like something catastrophic happened and *believed* that the ant bites may have caused it because they were "temporally associated." He also stated that he had no evidence that the ant bites actually caused a severe medical event or that Smothers went into anaphylactic shock or had an allergic reaction. He acknowledged that the treating physicians considered and dismissed the possibility that the ant bites were infected and that blood cultures were negative for infection. He further acknowledged that the treating physicians indicated that the bites healed after three to four days, and her medical condition had improved before she left the hospital. He recognized that there was evidence that Smothers had diabetes, emphysema, a urinary tract infection, and other ailments that could also have caused her deterioration and that a medicine she was given for

her emphysema, corticosteroids, could also have caused her skin to break down. *See id.* (stating that expert's failure to rule out other causes rendered his opinion "little more than speculation"). He stated that urinary tract infections are a "high cause" for deaths due to cardiopulmonary arrest (one of the causes of death listed on Smothers's death certificate) among nursing home populations. He stated that the urinary tract infection was just as likely to have caused the deterioration of Smothers's condition as was the ant attack. He also admitted the possibility that the skin breakdown simply progressed in the week between the last entry in the Gulf Health records and her admission to the hospital and that the ant bites did not necessarily contribute to this breakdown. He concluded that the ant bites did not proximately cause Smothers's death.[5]

In summary, Messmer's testimony did not reveal that he had specialized training or experience relating to insect bites and their effect on geriatric patients. Additionally, his testimony was highly speculative in nature. Consequently, the trial court did not abuse its discretion in determining that Bartosh failed in her burden to establish that Messmer's testimony was based on a reliable foundation. *See Robinson*, 923 S.W.2d at 556. Accordingly, Bartosh's second issue is overruled.

## C. Photographs

In her third issue, Bartosh contends that the trial court erred in excluding photographs taken of Smothers after the fire ant attack. At trial, Gulf Health argued that certain of the photographs were substantially more prejudicial than probative in nature, citing Rule 403 of the Texas Rules of Evidence. TEX.R. EVID. 403.[6] Bartosh argues that the excluded exhibits were necessary to show the number of ant bites and, thus, the level of pain suffered by Smothers.

Bartosh presented a total of thirty-six photographs for admission, marked as plaintiff's exhibits 11 through 46. The trial court admitted seven photographs, specifically exhibits 11, 12, 14, 15, 19, 42, and 46. All of the admitted photographs except exhibit 42 show areas of Smothers's legs that were attacked by the fire ants. Exhibit 42 is a photograph of Smothers's face. Five of the excluded photographs, exhibits 13, 16, 18, 21, and 39, show the same areas of ant bites shown in the admitted exhibits. Two more photographs, exhibits 43 and 44, show Smothers's face from the same angle as does exhibit 42. The trial court did not abuse its discretion in excluding these photographs because they were clearly cumulative of photographs that were admitted. *See Nissan Motor Co.*, 145 S.W.3d at 144 (holding that the exclusion of cumulative evidence cannot constitute harmful error).

Fourteen of the excluded photographs, exhibits 17, 20, 22–24, 27–31, 34, 36, 37, and 40, show a bed sore on Smothers's right buttock. Bartosh acknowledges that this tissue damage is not a subject of the current lawsuit. She contends, however, that the photographs of the spot were still admissible because there were ant bites on Smothers's buttocks. It is difficult to tell

---

5. Messmer may not have been perfectly clear on the legal definition of proximate cause. *See generally IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798–99 (Tex.2004) (defining proximate cause).

6. Rule 403 states as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

whether this is true from the photographs. The jury heard testimony from at least two witnesses, including the photographer who took the photographs, that there were ant bites on Smothers's buttocks; therefore, the photographs themselves would have been of limited additional probative value. Further, the tissue affected by the bed sore appears to be considerably more damaged than does the tissue subject to the ant attack. Because it is likely that the bed sores developed while Smothers was in Gulf Health's care, the trial court was within its discretion in determining that the prejudicial effect of these photographs outweighed their probative value under Rule 403. *See Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 499–500 (Tex.App.-Fort Worth 2001, pet. denied).

The remaining eight excluded photographs, exhibits 25, 26, 32, 33, 35, 38, 41, and 45, show additional sores on Smothers's heel and arm. Again, Bartosh acknowledges that the bed sores are not subjects of the current lawsuit. She does not assert that these photographs show any ant bites or were admissible for any other purpose. Accordingly, she has failed to show that the trial court abused its discretion in excluding them. *See* Tex. R.App. P. 38.1(h).

The trial court did not abuse its discretion in excluding the photographs. Accordingly, Bartosh's third issue is overruled.

### D. Cumulative Effects of Error

In her fifth issue, Bartosh contends that the cumulative effects of the trial court's errors unfairly limited evidence regarding damages. In addition to the arguments raised above, Bartosh additionally asserts under this issue that the trial court erroneously (1) restricted the time frame regarding which evidence could be offered; (2) permitted Jason Finney to testify without having been listed as a witness in pretrial disclosures; and (3) struck portions of her Fifth Amended Petition. Because we have not found that any of the alleged errors raised under previous issues were either error or harmful error, we need not readdress those complaints under Bartosh's cumulative error complaint. We address each of the additional matters in turn.

### 1. Timeframe

■ Bartosh contends that the trial court erred in restricting the time frame regarding which evidence could be offered concerning the presence of and treatment for fire ants at the facility. Specifically, she complains that the court excluded evidence that (1) Ecolab had treated the property on April 30, 2001, and (2) a different pest control company was called to treat the property in September 2001 because ants were found at the facility.

Because Bartosh prevailed on the issue of Gulf Health's liability, the exclusion of this evidence could not be harmful error in relation to that issue. *See Holeman*, 989 S.W.2d at 402; *Morriss*, 348 S.W.2d at 793–94. Further, the two additional treatments for fire ants clearly have no relevance to the damages elements submitted to the jury: physical pain and mental anguish, disfigurement, and medical care costs. Thus, Bartosh has failed in her burden to prove that the excluded evidence was controlling on a material issue of fact. *See Williams Distrib. Co.*, 898 S.W.2d at 817; *Manon*, 142 S.W.3d at 393.[7]

### 2. Jason Finney

■ Bartosh next asserts that the trial court erred in permitting Jason Finney to testify without having been listed as a

---

7. Bartosh does not address any of her complaints under issue five in relation to Ecolab.

witness in pretrial disclosures. Finney was the Ecolab employee who serviced the Gulf Health account. Finney was not called to testify prior to the trial court's granting of a directed verdict favoring Ecolab. Gulf Health called him during its case-in-chief after Bartosh concluded her case and the trial court released Ecolab. Bartosh does not claim that any of Finney's testimony related to the damages elements submitted to the jury. Indeed, our review of Finney's testimony reveals that it was limited to his treatments at the facility and his communications with Gulf Health employees. Because Bartosh prevailed on the liability issue against Gulf Health and Finney's testimony did not relate to any damages issues submitted to the jury, any error in admitting his testimony would have been harmless. *See Williams Distrib. Co.,* 898 S.W.2d at 817; *Manon,* 142 S.W.3d at 393; *Holeman,* 989 S.W.2d at 402; *Morriss,* 348 S.W.2d at 793–94.

### 3. Fifth Amended Petition

 Lastly, Bartosh contends that the trial court erred in striking portions of her Fifth Amended Petition in which she requested exemplary damages and purported to assert a claim under section 22.04(a) of the Texas Penal Code. Tex. Pen.Code Ann. § 22.04(a) (Vernon 2003) ("Injury to a Child, Elderly Individual, or Disabled Individual"). The court struck portions of the pleading when it granted Gulf Health's special exceptions. Gulf Health specially excepted to Bartosh's claim for exemplary damages on the basis that her pleading failed to set forth facts or allegations demonstrating a right to such damages. Gulf Health specially excepted to Bartosh's pleading under section 22.04(a) on the basis that it did not state a claim on which relief could be granted. Bartosh did not replead either claim. On appeal, except for stating that her Fifth Amended Peti-

tion was timely filed, Bartosh provides no argument and no authority to explain how the trial court erred in striking the sections of the pleading; thus, she has waived this argument. Tex.R.App. P. 38.1(h); *Sterling v. Alexander,* 99 S.W.3d 793, 799 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

In summary, Bartosh has failed to establish that the trial court committed any harmful error, much less multiple occasions of harmful error. Accordingly, her fifth issue is overruled.

## III. Directed Verdict

In her fourth issue, Bartosh contends that the trial court erred in granting a directed verdict favoring Ecolab at the close of her case-in-chief. She sued Ecolab for negligence arising out of its provision of pest control services at the Gulf Health facility. Ecolab's motion for directed verdict asserted that Bartosh failed to present any evidence that Ecolab had any legal duty toward Smothers or that it had breached any such duty.

A trial court may direct a verdict when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex.2000). In reviewing the grant of a directed verdict, we utilize the normal standards for reviewing the legal sufficiency of the evidence. *City of Keller v. Wilson,* 168 S.W.3d 802, 809–828 (Tex.2005).

### A. The Ecolab–Gulf Health Relationship

In the contract between Ecolab and Gulf Health, Ecolab agreed to provide periodic services "in accordance with current pest elimination procedures to eliminate rats, mice, and cockroaches," and it guaranteed that during the period of service, rats,

mice, and cockroaches would not become established on the premises. Although the agreement also states that Ecolab would treat for ants and other insects with the regular service, any necessary baiting would be at an additional charge. The agreement expressly excludes coverage for fire ants unless noted in the "Special Instructions" section. The only reference to ants in the "Special Instructions" section is the statement: "Ants not guaranteed."

The record also contains customer service reports from Ecolab's visits to the facility. Most of these include the following language: "Got Ants? Try our GroundForce Ant Program." There was testimony and literature introduced that the GroundForce Program was designed to provide comprehensive protection against fire ants and other crawling insects not covered by the basic pest control agreement. It included investigation, monitoring, baiting, and spraying. There was undisputed testimony that Ecolab recommended this service to Gulf Health on several occasions and that Gulf Health consistently declined.

The service reports further indicate that on four occasions, June 22, July 12 and 24, and August 1, the Ecolab technician, Jason Finney, applied fire ant bait at the Gulf Health facility. Specifically, the reports identify each application as a spot treatment on the exterior of the property.

## B. Duty and Breach

Bartosh contends that there was evidence that Ecolab had a duty toward Smothers and that it breached that duty. Ecolab's primary argument in its motion for directed verdict was that the contract for pest control services between itself and

Gulf Health expressly excluded treatment or monitoring for fire ants, except for spot treatments as requested by Gulf Health. Ecolab asserted that because it had no contractual duty to treat or monitor for fire ants at the facility, it cannot be held responsible for the fire ant attack on Smothers. Bartosh, however, argues that her negligence claims are independent of any contractual obligation; therefore, she can maintain her negligence cause of action. She bases this conclusion on four points: (1) she suggests that this is a negligent activity case; (2) she cites cases from other jurisdictions in which plaintiffs sought to hold pest control companies liable for damages from fire ant attacks; (3) she suggests that the fire ant related services provided by Ecolab were performed negligently; and (4) she contends that Ecolab's duty stems from the fact that it had actual and constructive knowledge that fire ants were present at the facility, and it had superior knowledge and expertise regarding fire ants as compared to Gulf Health. We discuss each contention in turn.

Bartosh first suggests that this is a negligent activity case. Her negligence claim against Ecolab is basically that Ecolab had a duty to discover and properly treat for fire ants and that it failed to do so, thus allowing the fire ants to attack Smothers. As the Texas Supreme Court has explained, "[r]ecovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity." *Timberwalk Apts., Partners, Inc., v. Cain,* 972 S.W.2d 749, 753 (Tex.1998); *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992).[8] Bartosh

---

8. For example, in *Keetch,* a Kroger employee sprayed plants approximately thirty minutes before the plaintiff slipped on the floor in the area where spraying had occurred. 845

S.W.2d at 264. The court explained that the plaintiff may have been injured by a condition created by the activity but was not directly injured by the activity (spraying) itself; thus,

clearly does not claim that any activity of Ecolab directly and contemporaneously harmed Smothers; instead, she claims that Ecolab's negligence permitted a condition to exist (*i.e.*, the presence of fire ants at the facility) that resulted in harm to Smothers. This is not a negligent activity case.

Second, Bartosh cites to several cases from other jurisdictions in which plaintiffs sought to hold pest control companies liable for damages due to fire ant attacks, including *J.C. Posey Estate v. Centennial Health Care Properties Corp.*, 78 F.Supp.2d 554 (N.D.Miss.1999); *Cook's Pest Control, Inc. v. Boykin*, 807 So.2d 524 (Ala.2001); and *Rein v. Benchmark Construction Co.*, 865 So.2d 1134 (Miss.2004). In *J.C. Posey Estate*, a federal district court addressed whether the plaintiff had fraudulently joined a pest control company in the lawsuit to defeat diversity jurisdiction. 78 F.Supp.2d at 556–57. In analyzing this issue, the court held that the plaintiff did have a viable claim against the company because there was evidence that it had a responsibility to treat for insects at the property where the attack occurred. *Id.* at 557. However, the court provides little explanation for the basis of this responsibility (although it does mention the contract between the pest control company and the nursing home). Therefore, it is impossible to compare the facts of that case to those of the case before us.

In *Cook's Pest Control*, the main issue was whether the plaintiff was a third-party beneficiary to the pest control contract such that he could be held to the arbitration clause in the contract. 807 So.2d at 526–27. In determining that the plaintiff was not a third-party beneficiary, the court vaguely references other theories of recovery that do not depend on the existence of the contract. *Id.* at 527. However, the court does not explain what these theories are or on what basis any duty was created for the pest control company. Thus, this case is of little help to Bartosh's position.

In *Rein*, the court considered, in a summary judgment context, whether several companies involved in maintenance at a nursing home were potentially liable for a fire ant attack on one of the patients. 865 So.2d at 1136–42. The court looked primarily at the contracts between the companies and the nursing home operator to determine what each company had agreed to do. One company, a landscaper, had not agreed to do any treatment for fire ants and, thus, could not be held liable for the attack, even though it had performed some treatments of its own volition. *Id.* at 1146–47. Another company had contracted to perform "ant bed control" and, thus, was potentially liable for the ant attack. *Id.* at 1147. Contrary to Bartosh's assertion, this case does not stand for the proposition that a pest control company has a duty to inspect and treat for fire ants absent a contractual basis for such duty. Instead, the case suggests that the existence of a duty should be ascertained from reviewing what services the party agreed to perform.

■ Next, Bartosh contends that when Ecolab did treat for fire ants at the facility, it then had a duty toward her and it performed that duty negligently. In support of this argument she cites only to statements by her entomology expert, Dr. Philip Hamman. As mentioned above, Ecolab spot-treated with fire ant bait on four occasions: June 22, July 12 and 24, and August 1. Hamman stated that he had no criticisms regarding the first three treatments. Although it was disputed at trial, the fourth treatment, on August 1, just four days before the attack on Smothers,

the facts did not support a negligent activity claim. *Id.*

may have been in response to someone's having reported seeing an ant in the room next to Smothers's room. Hamman testified on direct examination that simply treating the exterior of the room, as the service report indicated was done, would not have been a sufficient response to the alleged ant sighting. On cross-examination, Hamman further explained that there should have been an exhaustive visual inspection in the area where the ant was reportedly seen. He emphasized, however, that no treatment should have been undertaken in the interior until there was a clear identification of a particular pest. He then acknowledged that he possessed no information regarding what Jason Finney, the Ecolab technician who serviced Gulf Health, did in response to the alleged ant report.[9] He stated that it would be difficult to criticize the August 1 treatment without knowing on what basis Finney made the application. Thus, Hamman's testimony does not support Bartosh's assertion that Ecolab performed fire ant related services in a negligent manner.[10] Bartosh cites no other evidence to support her contention that Ecolab negligently performed such services.[11] In other words, assuming Ecolab had a duty toward

Smothers when it did provide treatment at the facility, Bartosh has presented no evidence that it breached that duty.

Lastly, Bartosh contends that Ecolab's duty stems from the fact that it had actual and constructive knowledge regarding fire ants at the facility and superior knowledge and expertise as compared to Gulf Health. Regarding the knowledge assertion, Bartosh suggests that Ecolab (1) knew fire ants had made their way to the room next to Smothers's room, and (2) should have known that the premises were infested with fire ants. Bartosh provides no citation for the suggestion that Ecolab had knowledge that fire ants were in the adjacent room, and she cites only to two excluded exhibits[12] as support for the suggestion that Ecolab should have known that the premises were infested.[13]

 Regarding the comparison of fire ant expertise as between Ecolab and Gulf Health, there was evidence that Ecolab is a professional pest control company and Gulf Health employees had limited experience or training relating to fire ants; however, Bartosh cites to no authority that superior expertise alone creates a duty in

9. Finney did not testify at trial until after the directed verdict was granted, and he apparently was not deposed prior to trial.

10. Furthermore, the evidence was consistent that it was Gulf Health, and not Ecolab, that undertook to monitor the property for fire ants, and that Gulf Health had repeatedly refused to purchase the Ecolab GroundForce Ant Program, which would have included monitoring.

11. Bartosh additionally cites to testimony by Finney that if he saw a problem at the facility he could treat at his discretion. However, this testimony came after the close of plaintiff's case and the grant of directed verdict. We therefore do not consider it in assessing the propriety of the directed verdict.

12. The excluded exhibits are a time sheet and an "emergency waiver" form from a different pest control company that treated the facility in September 2001, over a month after the attack on Smothers. Interestingly, the form notes only that there was an "imminent infestation" and neither document references any current or former infestation.

13. In her statement of facts, Bartosh asserts that Hamman concluded that there was an infestation at the facility based on three things: (1) the indication that ants may have been in the adjacent room within four days of the attack; (2) the prior exterior treatments for fire ants; and (3) the attack on Smothers. Obviously, Ecolab could not have known about the attack on Smothers prior to the attack, and thus would not have had known of this supposed evidence of an infestation.

this situation. There are certainly situations in which one party's superior knowledge is considered as a factor (perhaps a deciding factor) in determining whether that party had a duty to act. *See, e.g., Humble Sand & Gravel, Inc. v. Gomez,* 146 S.W.3d 170, 191–92 (Tex.2004) (considering "superior knowledge" of risk as a factor in determining scope of duty to warn in products liability case); *McIntosh v. NationsBank,* 963 S.W.2d 545, 548 (Tex. App.-Houston [14th Dist.] 1997, writ ref'd) (considering "superior knowledge" of risk as a factor in determining scope of duty to warn in premises liability case). However, the law does not generally impose a duty on a party simply because it possesses expertise in a field, absent circumstances requiring the party to put that expertise to use. Here, the evidence was consistent that it was Gulf Health's, and not Ecolab's, responsibility to monitor the property for fire ants, and that Gulf Health repeatedly refused to purchase the GroundForce Ant Program, which would have placed a duty on Ecolab to monitor for fire ants and to train facility staff. Hamman, plaintiff's own expert, acknowledged that if a client refused to purchase the fire ant program, there was not much a pest control company could do, and it certainly did not have to provide the service for free. Accordingly, we find Bartosh's superior expertise argument to be without merit under the circumstances of this case.

Bartosh has failed to demonstrate that she presented evidence raising a fact issue essential to her right of recovery. *See Fin. Review Servs.,* 29 S.W.3d at 77. The trial court did not err in granting the directed verdict. Bartosh's fourth issue is overruled.

## IV. Cross–Point

 In its sole cross-point, Gulf Health asserts that because it has already ten-

dered payment of the damages to Bartosh, this court should not award her any additional post-judgment interest after the date of tender, citing Tex. Fin.Code Ann. § 304.005 (Vernon Supp.2004–05), *et al.* However, this court does not make any award to Bartosh. We simply affirm the trial court's judgment. Gulf Health does not allege any error in the trial court's judgment. Accordingly, we dismiss its cross-point as moot.

The trial court's judgment is affirmed.