COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| HILARIO B. ORTIZ, | § | No. 08-08-00345-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 210th District Court |
| STEPHEN PHILIP GLUSMAN, M.D., | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 2008-4923) |
| | § | |

**O P I N I O N**

Appellant, Hilario Ortiz, appeals the trial court's summary judgment granted in favor of Appellee, Dr. Stephen Glusman, stemming from the former's medical malpractice suit for negligence. In two issues on appeal, Ortiz challenges the trial court's exclusion of evidence and contends that summary judgment in favor of Dr. Glusman was improper. We affirm.

**BACKGROUND**

On May 9, 2003, Ortiz was admitted to Del Sol Medical Center after complaining of fever, chills, sweats, and low back pain. Dr. Oswaldo Cajas was Ortiz's attending physician while at Del Sol. The following day, Ortiz developed abnormal neurological symptoms including numbness and weakness in his lower extremities, and urinary incontinence. Accordingly, Dr. Cajas ordered a neurological consultation with Dr. Glusman, and Del Sol staff contacted Dr. Glusman's answering service.

Although not on-call that day, Dr. Glusman returned the call in the afternoon and spoke to

Nurse Vivian Atchinson.[1] Dr. Glusman informed the nurse that he was unavailable to see any patients that day. Thus, Dr. Glusman refused the consultation for that day, but stated that he would see the patient the following day, if Dr. Cajas believed that was appropriate. Dr. Cajas did not believe that Ortiz's condition was an emergency, but rather ordered the consultation on a routine, non-stat basis.

In the early morning hours on May 11, 2003, Ortiz's condition worsened. At 6 a.m., Dr. Suresh Antony, an infectious disease specialist, found paralysis and recommended that Ortiz be transferred to Las Palmas Medical Center. By the time Dr. Glusman arrived at Del Sol Medical Center, Ortiz had already been transferred to the other hospital.

Now suffering from a permanent spinal cord injury, Ortiz sued Dr. Glusman for negligence, alleging that Dr. Glusman knew or should have known that his neurological dysfunction required evaluation on May 10, 2003, and that Dr. Glusman was negligent in failing to timely evaluate Oritz that day. Subsequently, Dr. Glusman moved for summary judgment on traditional and no-evidence grounds. Ortiz, relying on Nurse Segura's deposition, responded that there was a question of fact as to whether a physician-patient relationship existed when Dr. Glusman allegedly spoke to Nurse Segura. Dr. Glusman objected to Nurse Segura's deposition, claiming that her testimony was irrelevant, speculative, and conclusory. After reviewing the pleadings, motions, and attachments, the trial court excluded Nurse Segura's testimony and granted summary judgment in favor of Dr. Glusman.

### EVIDENTIARY RULINGS

---

[1] Ortiz claims that Dr. Glusman spoke to Nurse Jessica Segura, not Nurse Atchinson. However, nothing in the record indicates that Dr. Glusman spoke to Nurse Segura. At most, a hypothetical posited during Nurse Segura's deposition suggests that if Nurse Atchinson did not speak to Dr. Glusman, she did. However, Nurse Segura did not remember attending to Ortiz, nor could she recall ever speaking to Dr. Glusman about a consult for Ortiz. And Dr. Glusman testified that he spoke only to Nurse Atchinson.

In Issue One, Ortiz asserts that the trial court abused its discretion by excluding Nurse Segura's testimony on grounds of speculation. According to Ortiz, Nurse Segura's testimony was not speculative, but relevant and admissible under Rule 406. We disagree.

*Standard of Review*

The standard of review for the admissibility of evidence in a summary-judgment proceeding is the same as that at a regular trial. *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997). That is, we review the trial court's ruling for an abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion when it acts without reference to guiding rules or principles. *Id*.

*Speculation*

We first address whether the trial court could find Nurse Segura's testimony speculative. Testimony based solely on conjecture and speculation is incompetent and cannot support a judgment. *General Motors Corp. v. Iracheta*, 161 S.W.3d 462, 470-71 (Tex. 2005). Indeed, "[s]tatements of subjective belief are no more than conclusions and are not competent summary judgment evidence." *Krishnan v. Law Offices of Preston Henrichson, P.C.*, 83 S.W.3d 295, 299 (Tex. App. – Corpus Christi 2002, pet. denied) (citing *Tex. Division-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994)).

Here, Nurse Segura's deposition testimony was clear: she did not remember attending to Ortiz, nor could she ever recall speaking to Dr. Glusman about a consult for Ortiz. Nothing in the summary-judgment record reflects that Nurse Atchinson, who always takes the consult calls, did not speak to Dr. Glusman, and Dr. Glusman testified that he spoke to Nurse Atchinson about the consult, not Nurse Segura. Because the record does not reflect that Nurse Segura spoke to Dr. Glusman, her testimony as to what might have occurred had she spoken to Dr. Glusman was mere conjecture and

speculation. *See Bartosh v. Gulf Health Care Center-Galveston*, 178 S.W.3d 434, 442-43 (Tex. App. – Houston [14th Dist.] 2005, no pet.); *Nelson v. Regions Mort., Inc.*, 170 S.W.3d 858, 865 (Tex. App. – Dallas 2005, no pet.).

Nevertheless, Ortiz attempts to rely on a hypothetical posed to Nurse Segura in which he posited that if Nurse Atchinson did not speak to Dr. Glusman, Nurse Segura must have as she was the only other possible nurse available to participate in the phone call with Dr. Glusman. However, a trial court does not abuse its discretion in excluding testimony based on an hypothetical that calls for speculation on the part of the witness. *See Trahan v. Lone Star Title Co. of El Paso, Inc.*, 247 S.W.3d 269, 284 (Tex. App. – El Paso 2007, pet. denied); *Nelson v. Regions Mort., Inc.*, 170 S.W.3d 858, 864 (Tex. App. – Dallas 2005, no pet.). Because Nurse Segura's testimony that she spoke to Dr. Glusman about the consult was speculative, we discern no abuse of discretion in the trial court's exclusion of her testimony.

*Rule 406*

We now turn to whether the trial court could have found Nurse Segura's testimony relevant and therefore admissible under Rule 406. That rule provides that evidence of a person's habit or routine practice is relevant to prove that the person acted in conformity therewith on the occasion in question. TEX. R. EVID. 406. To be admissible, the habit evidence must be "a regular response to a repeated specific situation." *Oakwood Mobile Homes, Inc. v. Cabler*, 73 S.W.3d 363, 375 (Tex. App. – El Paso 2002, pet. denied). In other words, his response must be the same specific one to the same set of facts. *Waldon v. City of Longview*, 855 S.W.2d 875, 879-80 (Tex. App. – Tyler 1993, no writ). One to two examples is insufficient to demonstrate a habit. *Felix v. Gonzalez*, 87 S.W.3d 574, 579 (Tex. App. – San Antonio 2002, pet. denied); *McClure v. Landis*, 959 S.W.2d 679, 681 (Tex. App. – Austin 1997, writ denied).

The record reflects that Dr. Glusman began practicing in El Paso on May 1, 2003, and Ortiz's consult was requested on May 10, 2003. Dr. Glusman was on call at the hospital only four times during that ten-day period. Although Nurse Segura testified that she interacted with Dr. Glusman before May 10, 2003, she did not state what those interactions entailed, how often they occurred, or whether they consisted of consultations. Such testimony alone certainly does not establish the predicate for the admissibility of evidence of Dr. Glusman's habit or routine practice under Rule 406. *See McClure*, 959 S.W.2d at 681; *Johnson v. City of Houston*, 928 S.W.2d 251, 254 (Tex. App. – Houston [14th Dist.] 1996, no writ). Moreover, to the extent that the testimony invoked Dr. Glusman's habit or routine practice in participating in consultations after the incident, that testimony would not suffice to establish Dr. Glusman's conduct on the day of the incident as Dr. Glusman testified that he changed the way he communicates with nurses concerning consultations after the incident occurred. *See Cabler*, 73 S.W.3d at 375 (requiring habit evidence to be "a regular response to a repeated specific situation"). Accordingly, Nurse Segura's testimony does not meet the requisites of Rule 406.

Finding no abuse of discretion in the trial court's exclusion of Nurse Segura's testimony we overrule Issue One.

## SUMMARY JUDGMENT

In Issue Two, Ortiz contends that the trial court erred by granting summary judgment in favor of Dr. Glusman. According to Ortiz, he submitted sufficient evidence to raise a genuine issue of material fact, and Dr. Glusman failed to conclusively establish, as a matter of law, that no physician-patient relationship existed. Again, we disagree.

### Standard of Review

We review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656,

661 (Tex. 2005). A summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In reviewing a summary judgment, we indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence Operating Co.*, 164 S.W.3d at 661.

*Applicable Law*

A cause of action for negligence has three elements: (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998). The threshold question, of course, is the existence of a duty. *Id.* If no duty exists, our inquiry into whether negligence liability may be imposed ends. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998).

In medical-malpractice cases, a physician-patient relationship is a prerequisite to the existence of any duty. *St. John v. Pope*, 901 S.W.2d 420, 423 (Tex. 1995) (on-call physician consulted by emergency room physician by phone did not form physician-patient relationship and therefore owed no duty to patient); *Thapar v. Zezulka*, 994 S.W.2d 635, 637-38 (Tex. 1999) (absence of doctor-patient relationship precluded victim's wife from maintaining medical negligence claims against psychiatrist based on treatment and diagnosis of patient who killed victim). To establish such a relationship, the physician need not have direct physical contact with the patient. *St. John*, 901 S.W.2d at 424. Indeed, a physician-patient relationship may be established at the express or implied consent of the physician. *Id.* at 423. However, merely being "on call" does not automatically create a physician-patient relationship, nor does it impose a duty. *Id.* at 424. When there is no prior relationship between the physician and the patient, there must be some affirmative action on the part of the physician to treat the patient to create such a relationship. *Majzoub v.*

*Appling*, 95 S.W.3d 432, 436 (Tex. App. – Houston [1st Dist.] 2002, pet. denied); *Day v. Harkins & Munoz*, 961 S.W.2d 278, 280 (Tex. App. – Houston [1st Dist.] 1997, no writ).

### *Application*

The record reflects that Dr. Glusman was not on-call on May 10, 2003. He told the nurse that he spoke to that he was not on call, that he was unavailable for a consult, and that he would see the patient the next day. In his deposition, Dr. Glusman expressly testified that he refused the consultation for May 10, 2003. Neither the nurse to whom he spoke, nor Dr. Cajas, the treating physician, indicated that Ortiz's condition was an emergency or that Dr. Glusman needed to see Ortiz on May 10, 2003. Rather, it was simply a routine consultation. This evidence does not demonstrate that a physician-patient relationship was created.

Moreover, although Dr. Glusman may have received some information about Ortiz's condition over the phone, it was not detailed information, and Dr. Glusman gave no diagnosis, nor did he give any orders to the nursing staff or tell them what action to take for the patient. He told the nurse that if Ortiz needed to be seen, then another neurologist needed to be called. Dr. Glusman also emphasized that it was Dr. Cajas' decision as to whether Ortiz needed to be seen on May 10, 2003, and Dr. Cajas testified that Ortiz could wait until the next day. *See St. John*, 901 S.W.2d at 424; *Majzoub*, 95 S.W.3d at 438.

And even if he had accepted the consult, Dr. Glusman did not see Ortiz until the following day, which was within the 24-hour window as provided by the hospital bylaws upon accepting the consultation. Thus, there was no contractual obligation created simply by accepting the consult. Furthermore, simply accepting a consult for a future evaluation, as here, does not create a physician-patient relationship at the time the consult is accepted when there is no affirmative act of treatment. *See Jackson v. Isaac*, 76 S.W.3d 177, 184 (Tex. App. – Eastland 2002, pet. denied); *Ortiz v. Shah*,

905 S.W.2d 609, 611-12 (Tex. App. – Houston [14th Dist.] 1995, writ denied).

Ortiz relies on *Lection v. Dyll*, 65 S.W.3d 696 (Tex. App. – Dallas 2001, pet. denied) to argue that a physician-patient relationship was created in this case. We find *Lection* distinguishable. In *Lection*, an emergency room doctor phoned an on-call specialist to discuss a diagnosis of a patient. *Id*. at 707. The specialist diagnosed Lection's condition over the phone, told the emergency room doctor that no other treatment was necessary, and assured the doctor that it was "all right" for her to leave the hospital. *Id*. According to the court, those statements constituted an evaluation of the information provided and a medical decision concerning the patient's need for treatment. *Id*. Thus, the court concluded that the summary-judgment evidence presented conclusively established a physician-patient relationship between the on-call specialist, who made affirmative acts of treatment, and the patient. *Id*.

But unlike *Lection*, Dr. Glusman was not on-call, he declined receiving detailed information from which he could diagnose Ortiz, he made no diagnosis of Ortiz, nor did he order any treatment plans or tell the nurses how to proceed with Ortiz's care. Nothing in the record reflects that, at the time of Dr. Glusman's telephone conversation, he made any medical decisions or had any responsibility to control the course of Ortiz's treatment. Rather, he refused the consult for May 10, 2003, and told the nurse that he would be available to see Ortiz the next day.

In short, for a duty to exist, a physician-patient relationship must be created. *St. John*, 901 S.W.2d at 423. Based on the summary-judgment record, it is clear that Dr. Glusman took no affirmative acts to treat Ortiz. Therefore, we find, as a matter of law, that no physician-patient relationship existed between Ortiz and Dr. Glusman at the time the consult phone call was received. Accordingly, we hold that the trial court did not err by granting Dr. Glusman's motion for summary judgment. Issue Two is overruled.

## CONCLUSION

Having overruled Ortiz's issues, we affirm the trial court's judgment.


                                        GUADALUPE RIVERA, Justice

February 16, 2011

Before Chew, C.J., McClure, and Rivera, JJ.