Richard HOLEMAN, E.W. Chesshire, John Wilke, Joe Gemza, Dan Frankhouser, Eugene Yates, and L.T. Bradt, Appellants,

v.

LANDMARK CHEVROLET CORPORATION and Bill Heard Chevrolet Corporation, Appellees.

No. 14–96–227–CV

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 28, 1999.

 

Joe Alfred Izen, Jr., Richmond, L.T. Bradt, Houston, for appellants.

Robert P. Gaddis, Roger A. Rider, R. Tate Young, Houston, for appellees.

Before Justices MAURICE E. AMIDEI, ANDERSON, LEE.*

## OPINION

JOHN S. ANDERSON, Justice.

Appellants, Richard Holeman, E.W. Chesshire, John Wilke, Joe Gemza, Dan Frankhouser, Eugene Yates, and L.T. Bradt sued appellees, Landmark Chevrolet Corporation and Bill Heard Chevrolet Corporation under the Deceptive Trade Practices Act (DTPA). The trial court entered a take nothing judgment and appellants bring twelve points of error. We affirm.

Landmark Chevrolet ran an advertisement on a radio station that, among other things, stated all offers would be accepted and that new trucks would be sacrificed, "regardless of loss." Appellants went to Landmark Chevrolet and made offers to purchase vehicles for amounts ranging from $50.00–200.00. Landmark refused these offers. Landmark subsequently ran a corrected advertisement, deleting the "all offers will be accepted" language. Landmark also ran a retraction of the original ad. In October 1991, appellants filed this lawsuit.

Several years later, Bill Heard Chevrolet ran a radio advertisement that included language, "[e]very deal will be accepted regardless of profit or loss." Appellant Bradt went to Bill Heard Chevrolet and handed the new car salesman, Al Cruz, a written "offer" to buy eight different vehicles for $100.00 each. The offer was refused. Bill Heard subsequently ran a retraction of the advertisement stating, "The sentence 'all offers would be accepted, regardless of profit or loss' should have read 'all reasonable offers will be accepted regardless of profit or loss'." Bill Heard was subsequently added as a defendant to the Landmark suit.

The case proceeded to trial on DTPA claims. The jury found no DTPA violations by Landmark as to appellants, Chesshire, Gemza, and Frankhouser. The jury did find violations as to appellants Holeman, Wilke, Yates, and Bradt, and awarded damages. The jury, however, found that none of the plaintiffs were "consumers" under the DTPA. Accordingly, the trial court entered a take nothing judgment in favor of appellees.

In points of error one, two, and four, appellants challenge the trial court's submission of the jury question regarding appellants' status as consumers and the trial court's failure to hold, as a matter of law, that appellants were consumers. Appellants contend the determination of whether a plaintiff is a consumer under the DTPA is a question of law for the trial court and not a question of fact for the jury.

 Trial courts have broad discretion in formulating a charge by which to submit disputed issues to the jury. *Varme v. Gordon*, 881 S.W.2d 877, 881 (Tex.App.—Houston [14th Dist.] 1994, writ denied). The standard of review on appeal for charge error is whether the trial court abused its discretion. *Texas Dept. Of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). Even if we determine the trial court abused its discretion, we must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Island Recreational Dev. Corp. v. Republic Of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986). We may not find reversible error unless the error, when viewed in light of the totality of the circumstances, amounted to such a denial of the rights of the complaining party as was rea-

---

* Senior Justice Norman R. Lee sitting by assignment.

sonably calculated and probably did cause rendition of an improper judgment. *Id.*

■ To seek recovery under the DTPA, a party must be a "consumer" as defined in section 17.45(4). Under this section, a "consumer" is "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services. . . ." TEX. BUS. & COM.CODE ANN. § 17.45(4) (Vernon 1987). Case law has determined that a DTPA consumer is one who in good faith initiates the purchasing process. *Martin v. Lou Poliquin Enterprises, Inc.,* 696 S.W.2d 180, 184 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). An individual initiates the purchasing process when he (1) presents himself to the seller as a willing buyer with the subjective intent or specific "objective" of purchasing, and (2) possesses at least some credible indicia of the capacity to consummate the transaction. *Id.* at 184–85.

■ Appellants argue there is no requirement in the Act that the consumer have sought in good faith to purchase. As support for their argument, appellants offer the example of involuntary consumer status conferred upon persons whose cars have been towed. *See Allied Towing Service v. Mitchell,* 833 S.W.2d 577 (Tex.App.—Dallas 1992, no writ)(party whose car was towed involuntarily acquired services and qualified party as "consumer" under the DTPA). Although the car owner in *Allied Towing* did not seek to acquire towing, the court held that the car owner did seek entertainment from an establishment that provided free parking and that there was a sufficient connection between the parking and towing service. *Id.* at 582. The exception for an involuntary consumer is in keeping with the legislative intent that the DTPA be given liberal construction in favor of consumers. *Cameron v. Terrell & Garrett,* 618 S.W.2d 535, 538 (Tex.1981); *Martin,* 696 S.W.2d at 183. Furthermore, the consumer did pay for the towing services. 833 S.W.2d at 581.

■ Where there is no actual purchase, a defendant seller may challenge the plaintiff buyer's status as a consumer. *Martin,* 696 S.W.2d at 185. If the seller raises such a challenge, the buyer must be prepared to offer proof of: (1) a good-faith intention to purchase and (2) the capacity to purchase the goods or services in question. *Id.* at 185. The seller may attempt to rebut the buyer's claim of consumer status. *Id.* If the seller offers proof that the buyer entered into the transaction without a true intention to purchase or without the capacity to consummate the transaction, the trier of fact must decide whether the buyer is a consumer, taking into account the legislature's intent that the DTPA be liberally construed to protect the public from deceptive trade practices. *Id.* Because appellants did not actually purchase any vehicles, we believe appellees could challenge appellants' status as consumers on the ground that appellants did not have a good faith intention to purchase.

Appellees challenged appellants good faith intention to purchase and, in response, appellants testified to their good faith intention to purchase vehicles and their capacity to purchase. This raised fact questions for the jury to resolve. Accordingly, we find no abuse of discretion by the trial court in submitting this disputed fact issue to the jury. We overrule points of error one, two, and four.

■ In points of error nine and eleven, appellants challenge the factual sufficiency of the evidence supporting the jury's finding that none of the plaintiffs were consumers. Appellants contend there is no evidence controverting the plaintiffs testimony that they heard the advertisement and, acting in good faith, went to Landmark Chevrolet and Bill Heard Chevrolet to buy vehicles. Appellees, however, insist the evidence establishes that none of the appellants had a good faith intention to consummate a transaction and therefore, the jury finding must be upheld.

■ In reviewing a factual sufficiency point, we must weigh all of the evidence in the record. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996). Jury findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* If we find the evidence insufficient, we must also

"clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust." *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

When a defendant challenges a plaintiff's status as a consumer, the plaintiff must be prepared to offer proof of: (1) a good-faith intention to purchase and (2) the capacity to purchase the goods or services in question. *Martin,* 696 S.W.2d at 185. No case law defines "good faith" in connection with the intention to purchase goods or services. In submitting the issue of consumer status to the jury, the trial court included a definition of consumer as "one who attempts to acquire goods from another in good faith and with the capacity to consummate the transaction." The jury was not instructed on the definition of "good faith." Appellants argue they had a good faith intention to purchase because they actually intended to buy vehicles for the prices offered.

In *Martin,* a panel of this court discussed the prerequisites for achieving consumer status under the DTPA when valuable consideration has not changed hands. 696 S.W.2d at 184. After describing the legislative intention that the DTPA be given liberal construction in favor of consumers, the court observed that this intent was served by conferring consumer status on parties who in good faith initiated the purchasing process. *Id.* at 183–84. The court held that the transfer of valuable consideration is not a prerequisite to consumer status under the DTPA.[1] A party initiates the purchasing process when he "(1) presents himself to the seller as a willing buyer with the subjective intent or specific 'objective' of purchasing, and (2) possesses at least some credible indicia of the capacity to consummate the transaction." *Id.* at 184–85 (emphasis omitted). Although this describes when the purchasing process is initiated, it does not define good faith.

The Texas Business and Commerce Code defines good faith as "honesty in fact in the conduct or transaction concerned." TEX. BUS. & COM.CODE ANN. § 1.201(19) (Vernon 1994). The Texas Supreme Court has held that the test for good faith is the actual belief of the party and not the reasonableness of that belief. *La Sara Grain v. First Nat'l Bank,* 673 S.W.2d 558, 563 (Tex.1984).

All appellants testified they made offers with the intent to purchase and that they believed the dealerships' advertisements meant that their offers would be accepted, regardless of the price offered. Several appellants conceded they knew their offers might not be accepted, but they believed the language in the advertisement required the dealers to accept any offer.

Appellees, however, claim appellants did not have a good faith intention to purchase because all of the appellants were acquainted with, or had a connection to, appellant Bradt (who is an attorney), they all made unreasonably low offers, they did not check whether the advertisements were in error, no other persons made such low offers, and one appellant was considering a DTPA lawsuit before making his offer.

We now turn to the evidence relevant to appellants' subjective intention to purchase. Appellant John Wilke testified that he believed he heard the Landmark advertisement on July 16, 1991. At the time he made the offer on the vehicles, he was working at Bradt's law office. Wilke stated, however, that he did not discuss the ad or the offer with Bradt until after making the offer. Wilke conceded he did not call the dealership to see if the advertisement was a mistake. Wilke's testimony was inconsistent as to whether he thought Landmark would accept his offer. Nonetheless, Wilke responded in the affirmative when asked if he thought the offer would be accepted whether or not it was reasonable.

1. In *Martin,* the appellant claimed that elimination of the requirement of valuable consideration from DTPA consumer status would precipitate a flood of frivolous DTPA claims. 696 S.W.2d at 185. The court was unimpressed with this claim and advanced three factors militating against this result: (1) the two-pronged showing of good faith intention to purchase and the capacity to purchase; (2) the requirement the claimant prove he suffered damages; and (3) the DTPA mandatory award of attorney's fees to a defendant if a court finds the suit groundless, brought in bad faith, or brought for harassment. *Id.*

Appellant E.W. Chesshire testified he knew Bradt, Wilke, and Holeman from the Masonic Lodge. Chesshire believed he heard the Landmark advertisement on Saturday, July 20, 1991.[2] He discussed the advertisement and visited Landmark with Larry Elkins, a neighbor of Chesshire's. Chesshire stated his belief that Landmark never intended to follow through on the advertisement. Chesshire would have found the advertisement more credible if it had been a plan to give away vehicles.

Appellant Joe Gemza testified he had retained Bradt's services in the past. Gemza also knows appellant Dan Frankhouser, who is a vendor to Gemza's company. Gemza recalled hearing the Landmark advertisement on a Friday, but the letter offer he sent to Landmark is dated July 16 or 18 (which would have been either Tuesday or Thursday). Gemza stated he spoke to Bradt about the offer within 48 hours of making the offer. Gemza was "shocked" by the language in the ad, but he did not call the dealership to determine if the ad was in error.

Appellant Richard Holeman testified he knew Bradt, but did not speak to him about the advertisement before he went to Landmark. Holeman does not know any of the other appellants. Holeman testified he heard the Landmark advertisement on July 16, 1991. Upon hearing the language in the advertisement, Holeman thought any offer, no matter how low, would be accepted and would be reasonable.

Appellant Dan Frankhouser testified he knew Bradt and Gemza. Frankhouser testified he heard the Landmark advertisement on July 16, 1991, but that he thought Gemza was with him when he heard the advertisement. Gemza, however, had testified he heard the advertisement on a Friday, which would have been July 20, 1991, after the original advertisement had been retracted. Frankhouser spoke to Gemza about the ad and the two men went to Landmark together. They discussed how they would make

offers under the terms and conditions specified in the advertisement. Frankhouser called Bradt after Landmark refused the offer. Frankhouser was shocked that "someone would say something as blatantly stupid as [the language in the advertisement] with no qualifications." Frankhouser did not attempt to determine if the advertisement was in error. Finally, Frankhouser stated he honestly thought he could purchase vehicles, with a total value of $200,000.00, for $1,000.00.

Appellant Eugene Yates testified Bradt is his son-in-law. Yates spoke to Bradt after he heard the Landmark advertisement on July 16, 1991, and Yates visited Landmark with Bradt. The two men asked a salesman which vehicles were part of the advertised sale. The two then chose vehicles and wrote down descriptions and vehicle identification numbers. Bradt wrote a written offer for Yates. Yates claimed Bradt did this as a friend and not as Yates' attorney. Yates testified he did not believe the Landmark advertisement was limited to the trucks specifically mentioned, but he did not attempt to determine if the advertisement was incorrect.

Appellant Bradt testified he heard the Landmark advertisement on July 16, 1991, and he discussed the advertisement with his family and with Yates. He claimed he did not discuss the advertisement with any of the other appellants. Bradt admitted he knows all of the appellants. Bradt insisted that he relied on the advertisement language when he made his offer to purchase. He admitted he knew Landmark might not accept his offer and that he had mentioned the possibility of bringing a DTPA claim if the dealership did not live up to its advertisement.

James Franklin Johnson, a representative from Landmark Chevrolet testified that the advertisement ran from July 16, 1991 to approximately noon on July 18, 1991. Johnson testified that no other customers made offers as low as appellants'.[3]

---

**2.** The original Landmark advertisement ran from July 16, 1991 to approximately noon on July 18, 1991. The corrected advertisement, without the "all offers will be accepted" language, was on the air on July 20, 1991.

**3.** Johnson recalled a customer named Diane Crockett making a low offer of $5,000 for a vehicle, however, she was also linked to Bradt in that the record contains a letter from Bradt describing Crockett's offer. There is no testimony about low offers from persons other than those

As to the Bill Heard advertisement, Bradt testified he heard the ad on January 26, 1994. Bradt thought this ad was deceptive because it said any deal would be accepted, "regardless of loss." Bradt made a written offer to purchase eight vehicles for $100 each, and he handed this offer to Al Cruz. Cruz said he could not accept that deal.

Sean Sullivan, the general sales manager at Bill Heard Chevrolet in 1994, testified that no one came to the dealership with an offer similar to Bradt's. Sullivan admitted the dealership keeps a log of all persons who visit the showroom, but that these logs were not produced because they are destroyed after fourteen days.

Despite appellants' testimony they intended to purchase vehicles for prices ranging from $50.00–100.00, the jury could have found the appellants were not acting in good faith by making such low offers, particularly in light of the fact that no other persons made such low offers. The jury also could have considered the appellants' link with Bradt as further indication that appellants may not have been acting independently with good faith. This is buttressed by the testimony that some appellants testified to hearing the advertisement after it had been pulled and the corrected advertisement was on the air. Because we find sufficient evidence supporting the jury's answers to jury questions four and eight (finding no consumer status for appellants as to Landmark or Bill Heard), we overrule points of error nine and eleven.

In point of error three, appellants claim the trial court erred in excluding evidence of attorney general complaints against Landmark for violations of the DTPA. This evidence includes a newspaper article and testimony about Landmark's agreement in September 1991 to pay $90,000.00 to settle complaints about false advertising. The alleged false or deceptive advertisements had included a mailing that claimed consumers could purchase directly from the manufacturer, a newspaper ad suggesting buyers could get a vehicle at half the manufacturer's suggested retail price, and a radio ad indicating buyers could obtain vehicles without a down payment or credit.

■ Exclusion of evidence is reversible error only if the exclusion was calculated to cause and probably did cause rendition of an improper judgment. *Gee v. Liberty Mut. Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989). Therefore, the exclusion of evidence usually does not result in reversible error unless the appellant can demonstrate the whole case turns on the particular evidence excluded. *Johnson v. City of Houston,* 928 S.W.2d 251, 253 (Tex.App.—Houston [14th Dist.] 1996, no writ); *Riggs v. Sentry Ins.,* 821 S.W.2d 701, 708–09 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

■ Landmark argues appellants have not met their burden of showing reversible error because the excluded evidence could only relate to the issue regarding "knowing" conduct and the jury affirmatively found Landmark acted "knowingly." Appellants, on the other hand, contend this evidence was necessary to rebut testimony that Landmark was reasonable and forthright with its customers. Appellants also wanted to offer this evidence as proof of motive, intent, absence of mistake or accident and to show routine practice. The evidence appellants sought to admit included complaints of prior customer problems with Landmark.

Evidence of prior acts is not admissible to prove the character of a person in order to show the party acted in conformity therewith on a particular occasion. *See* Tex.R. Evid. 404(b). Furthermore, the credibility of a witness may be attacked by evidence in the form of an opinion or reputation. Tex.R. Evid. 608(a). Specific instances of conduct, other than conviction for a crime, may not be inquired into nor proved by extrinsic evidence for purposes of attacking credibility. *Id.* 608(b). Thus, we find the trial court properly ruled that evidence of prior customer problems was not admissible to prove Landmark acted similarly with appellants in this case.

■ This type of evidence may be admitted, however, to show a party's intent where material, if the evidence shows the

acquainted with, or represented by, appellant Bradt.

prior acts are so connected with the transaction at issue that they may all be part of a system, scheme or plan. *Underwriters Life Ins. Co. v. Cobb,* 746 S.W.2d 810, 815 (Tex. App.—Corpus Christi 1988, no writ); TEX.R. EVID. 404(b). Where intent must be shown under the DTPA, the plaintiff must show either intent to deceive or "knowing" conduct. *Pennington v. Singleton,* 606 S.W.2d 682, 689 (Tex.1980). Appellants alleged a cause of action requiring a showing of knowing conduct and the jury found that Landmark acted "knowingly" and that, at least as to four plaintiffs, Landmark engaged in false, deceptive practices that were a producing cause of damages. Appellants have not shown, however, that the exclusion of the evidence of prior acts was harmful because the jury found in their favor on the issue of "knowing" conduct. Furthermore, we are unconvinced that this evidence was necessary to rebut testimony that Landmark was forthright with customers or that the rush to get an advertisement on the air led to the mistakes or omissions in the advertisement. Because the jury found in favor of four plaintiffs on liability and damages issues, we cannot conclude that the excluded evidence was crucial to appellants' case. Accordingly, we overrule point of error three.

In points of error six through eight and ten, appellants challenge the sufficiency of the evidence supporting the jury's findings on liability and damages. Having upheld the jury's finding that none of appellants were consumers, we need not consider these points of error.

In point of error five, appellants claim the jury's verdict is against the greater weight and preponderance of the evidence. This general point of error relates to the specific objections found in points of error six through eleven. Because we have upheld the jury's finding that appellants were not consumers, we need not address this point of error.

Finally, under point of error twelve, appellants claim the trial court erred in denying appellants' motion for judgment non obstante veredicto. Appellants contend the jury answers to questions four and eight (regarding consumer status) were immaterial in that they should not have been submitted. Appellants further contend question four was rendered immaterial by the answer to question one regarding liability. Appellants claim that because they were consumers, falsity of appellees' conduct was established, damages were established as a matter of law, and judgment in their favor should have been entered at trial.

A trial court may disregard jury findings and grant a motion for judgment notwithstanding the verdict only when there is no evidence upon which the jury could have made its findings. To determine whether there is any evidence, we must review the record in the light most favorable to the jury findings, considering only the evidence and inferences which support the findings and rejecting the evidence and inferences contrary to the findings. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex. 1990). When there is more than a scintilla of competent evidence to support the jury's findings, the judgment notwithstanding the verdict should be reversed. *Id.* at 228.

Because we have found there is more than a scintilla of evidence to support the jury's findings that appellants were not consumers (under jury questions four and eight), the trial court properly denied appellants' motion for judgment notwithstanding the verdict. We overrule point of error twelve.

We affirm the judgment of the trial court.