Affirmed and Opinion filed October 11, 2005









Affirmed
and Opinion filed October 11, 2005.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00715-CV

____________

 

SANDRA SMOTHERS
BARTOSH, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF JOSE DE ALMINANA
SMOTHERS,
Appellant

 

V.

 

GULF HEALTH CARE
CENTER-GALVESTON AND ECOLAB, INC., Appellees

 



 

On Appeal from the Probate
Court

Galveston County, Texas

Trial Court Cause No. 64,592-A

 



 

O P I N I O N








Jose de Alminana Smothers was attacked by
fire ants while in the care of a nursing home facility run by Gulf Health Care
CenterBGalveston.  She subsequently died from other causes.  Her daughter, Sandra Smothers Bartosh, sued
Gulf Health and Ecolab, Inc., the company that provided pest protection
services at the property.  Bartosh sued
in her individual capacity and as administratrix of her mother=s estate.  She alleged medical malpractice and premises
liability against Gulf Health and negligence against Ecolab.  The trial court granted summary judgment
favoring Gulf Health on the malpractice claims prior to trial and granted a
directed verdict favoring Ecolab at the close of the plaintiff=s
case-in-chief.  Consequently, only the
premises liability claim against Gulf Health was submitted to the jury.  The jury found Gulf Health liable and awarded
$136,000 to Bartosh.  The trial court
entered final judgment in accordance with the jury=s findings.

On appeal, Bartosh contends that the trial
court erred in excluding (1) testimony from Texas Department of Human Resources
personnel together with a report generated by those personnel, (2) testimony of
plaintiff=s medical expert, and (3) photographs of
Smothers.  Bartosh further contends that
(4) the cumulative effect of the court=s errors was to
improperly limit the jury=s assessment of damages, and (5) the trial
court erred in granting a directed verdict favoring Ecolab.  Gulf Health raises a cross-point asserting
that because it has already tendered payment of the damages to Bartosh, this
court should not award her any additional post-judgment interest after the date
of tender.  We affirm.

I. 
Background

On August 5, 2001, Jose de Alminana
Smothers was taken to the University of Texas Medical Center at Galveston
because she had become unresponsive at the Gulf Health facility in
Galveston.  Smothers was 82 at the time
and was at the facility because she was suffering from end stage emphysema,
among other ailments.  While at the
hospital, it was discovered that she had fire ants crawling on her.  Although the evidence was somewhat
inconsistent regarding how many ant bites she had sustained, she apparently had
suffered dozens of bites to her legs. 
She was unresponsive at the time of admission but was observed to be
moaning in apparent pain.  She was
treated at the hospital and discharged on August 24, 2001.  On August 26, she died at home.








Her daughter, Sandra Bartosh, sued Gulf
Health, alleging initially that it committed medical malpractice resulting in
wrongful death by failing to prevent the fire ant attack.  Bartosh subsequently amended her pleading to
allege premises liability against Gulf Health. 
The trial court granted Gulf Health=s motion for
summary judgment in regard to the medical malpractice and wrongful death
actions.  Bartosh also sued Ecolab,
alleging that it had committed negligence in the provision of pest control
services at the facility.  At the close
of the plaintiff=s case, Ecolab moved for a directed
verdict based on Bartosh=s failure to prove that Ecolab had a duty
toward Smothers or that it had breached that duty.  The trial court granted the directed verdict.

Also during trial, the court denied the
admission of certain evidence about which Bartosh complains on appeal.  First, the court refused to allow a report
prepared by Texas Department of Human Resources (TDHR) personnel; the court
additionally refused to allow the employees themselves to testify.  The report included several unattributed
statements regarding conditions and events at the Gulf Health facility and
discussed the possibility of statutory and code violations at the
facility.  Second, the court refused to
allow Bartosh=s medical expert, Dr. John Messmer, to
testify.  Messmer was expected to testify
that the ant attack may have explained the deterioration in Smothers=s health and may
have contributed to her death.  Lastly,
the court refused to allow certain of the photographs offered to show the
injuries sustained by Smothers.  Other
photographs were admitted showing the area subject to the ant bites.  Some of the excluded photographs also showed
areas of bed sores on Smothers=s body that were
not part of this litigation.

The jury charge was comprised of only two
questions.  The first was a general
question regarding premises liability, and in response, the jury found that
Gulf Health=s negligence proximately caused Smothers=s injuries.  The second question was on damages and
included only three elements: (a) physical pain and mental anguish, (b)
disfigurement, and (c) medical care.  The
jury awarded $136,000 in aggregate for the three elements.  The trial court entered judgment in
accordance with the verdict, and also awarded costs and prejudgment interest,
for a total judgment of $154,592.41 plus post-judgment interest.

II. 
Issues Relating to Gulf Health

A. 
TDHR Evidence








In her first issue, Bartosh contends that
the trial court erred in excluding testimony from TDHR personnel as well as a
report generated by those personnel. 
Generally, the decision to admit or exclude particular evidence rests
within the sound discretion of the trial court. 
City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995);
Frazier v. Havens, 102 S.W.3d 406, 410 (Tex. App.CHouston [14th Dist.]
2003, no pet.).  To obtain reversal of a
judgment based upon the admission or exclusion of particular evidence, the
appellant must show that (1) the trial court erred in admitting or excluding
the evidence, and (2) such error was reasonably calculated to cause and
probably did cause rendition of an improper judgment.  Tex.
R. App. P. 44.1; Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d
394, 396 (Tex. 1989); Frazier, 102 S.W.3d at 410.  To establish harm (i.e., that the
error was reasonably calculated to cause and probably did cause rendition of an
improper judgment), the appellant must demonstrate that the excluded evidence
was both controlling on a material issue and not cumulative of other evidence.  Williams Distrib. Co. v. Franklin, 898
S.W.2d 816, 817 (Tex. 1995).








Because Bartosh received a verdict and a
judgment that Gulf Health=s negligence proximately caused Smothers=s damages, she
cannot show harm from the exclusion of evidence related solely to causation,
even if its exclusion was error.  See
Holeman v. Landmark Chevrolet Corp., 989 S.W.2d 395, 402 (Tex. App.CHouston [14th
Dist.] 1999, pet. denied) (holding plaintiffs could not show harmful error in
exclusion of evidence regarding knowing conduct where jury found in their favor
on that issue); Morriss v. Centex Paving Co., 348 S.W.2d 790, 793-94
(Tex. Civ. App.CEastland 1961, writ ref=d n.r.e.) (holding
plaintiffs could not show harmful error in exclusion of evidence regarding
defendant=s negligence where jury found in their
favor on that issue).  Although Bartosh
globally asserts that all evidence relevant to causation is also necessarily
relevant to damages, she cites no authority for this proposition and offers no
explanation as to how conditions at the property discussed in the TDHR report
and the prospective testimony of the TDHR employees contributed to Smothers=s physical pain
and mental anguish, her disfigurement, or the costs of her medical care.  See Manon v. Solis, 142 S.W.3d 380,
393 (Tex. App.CHouston [14th Dist.] 2004, pet. denied)
(finding claim based on exclusion of evidence was without merit because
appellant failed to explain how the excluded evidence was controlling on a
material issue).  The jury, in effect,
found that Gulf Health=s negligence allowed the ant attack to
occur.  In the absence of a charge
submission on exemplary damages, it is difficult to fathom how additional
evidence related to causation could increase the amount of damages, as those
elements were submitted to the jury.  The
jury charge did not include a submission on exemplary damages.[1]  Consequently, Bartosh cannot show harm in the
trial court=s exclusion of causation evidence from
TDHR personnel or reports.

Regarding evidence relating to damages,
Bartosh points only to statements in the TDHR report and in the witness=s deposition
testimony that when Smothers was transferred to the hospital she was a
dependent, unresponsive female with multiple ant bites.  These observations, apparently taken from a
review of hospital records, were also reported at trial by Bartosh herself, by
medical personnel who treated Smothers, and by the photographer who was called
in to take photographs of Smothers; the statements were also contained in the
hospital records that were admitted at trial. 
The exclusion of merely cumulative evidence cannot constitute harmful
error.  Nissan Motor Co. Ltd. v.
Armstrong, 145 S.W.3d 131,144 (Tex. 2004).

Bartosh has failed in her burden of
demonstrating that the excluded TDHR evidence was both controlling on a
material issue and not cumulative of other evidence.  See Williams Distrib. Co., 898 S.W.2d at
817; Manon, 142 S.W.3d at 393. 
Thus, even if the exclusion of the TDHR evidence was error, Bartosh
cannot show that it was reasonably calculated to cause and probably did cause
rendition of an improper judgment.  Tex. R. App. P. 44.1; Gee, 765
S.W.2d at 396.  Her first issue is
overruled.

B. 
Plaintiff=s Expert








In her second issue, Bartosh contends that
the trial court erred in excluding the testimony of her medical expert, Dr.
John Messmer.  Bartosh maintains that the
omission of Messmer=s testimony unfairly limited her proof of
damages.  Specifically, Bartosh expected
Messmer to testify that the ant attack explained why Smothers=s health went into
a sudden decline requiring her transfer to the hospital and that it contributed
to her death.

Under Rule 702 of the Texas Rules of
Evidence, the proponent of expert testimony must establish that (1) the expert
is qualified to render an opinion on the subject matter, (2) the testimony is
relevant to the issues in the case, and (3) it is based upon a reliable
foundation.  Tex. R. Evid. 702; E.I. du Pont de Nemours & Co. v.
Robinson, 923 S.W.2d 549, 556 (Tex. 1995). 
The trial court has the responsibility for making the preliminary determination
as to whether the proponent has met these requirements.  Tex.
R. Evid. 104(a); Robinson, 923 S.W.2d at 556.  We review a trial court=s decision to
admit or exclude expert testimony under an abuse of discretion standard.  K‑Mart Corp. v. Honeycutt, 24
S.W.3d 357, 360 (Tex. 2000).








Gulf Health objected to Messmer=s proposed
testimony based on several theories, including that it was not based upon a
reliable foundation.  A witness who has
been identified as an expert often appears inherently more credible than a lay
witness, and a jury may be readily swayed by the designation.  See Robinson, 923 S.W.2d at 553.  Consequently, Atrial judges have
a heightened responsibility to ensure that expert testimony show some indicia
of reliability.@  Id.  Although the requirements of qualification,
relevance, and reliability set forth in Robinson apply to all expert
testimony, the specific factors enumerated in that opinion do not necessarily
apply in every case.  See Gammill v.
Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 720-21, 726-27 (Tex. 1998); Robinson,
923 S.W.2d at 557.[2]  In Gammill, instead of using the Robinson
factors, the court assessed reliability based on the degree of analytical gap
between the data examined and the opinion proffered.  972 S.W.2d at 727; see also Taylor
v. Am. Fabritech, Inc., 132 S.W.3d 613, 619 & n.10 (Tex. App.CHouston [14th
Dist.] 2004, pet. denied) (stating that under Gammill, court must
determine whether the expert testimony is based on a reliable foundation); In
re D.S., 19 S.W.3d 525, 529-30 (Tex. App.CFort Worth 2000,
no pet.) (following Gammill in analyzing expert medical testimony
regarding causation of injuries).[3]  Specifically, the Gammill court found
that the expert=s failure to show how his observations
supported his conclusions rendered his testimony unreliable, stating that the
trial court was not required Ato admit opinion
evidence which is connected to existing data only by the ipse dixit of
the expert.@ 
972 S.W.2d at 727 (quoting Gen. Elec. Co. v. Joiner, 522 U.S.
136, 146 (1997)).








Messmer gave two depositions in this
lawsuit.  He opined that the fire ant
attack might explain why Smothers went into a sudden decline requiring her
transfer to the hospital and that it may have contributed to her death.[4]  He specifically offered two possible
scenarios regarding the affect of the ant bites on Smothers.  First, he theorized that the attack could
have triggered an immune system response that lowered her blood pressure and,
in turn, exaggerated preexisting skin lesions.  Second, he suggested that the ants may have
caused a bacterial infection, such as by streptococcus, to be introduced into
Smothers=s body causing a
sudden deterioration in the skin lesions and possibly causing her to go into
anaphylactic shock.  He additionally
suggested that she may have had an allergic reaction to ant toxins.  He based these conclusions on his medical
training and experience and his review of hospital and facility records,
photographs of Smothers, and depositions taken in this case.

Messmer described himself as a family
physician and a specialist in geriatric medicine.  He briefly explained his training in
geriatrics and his certification in that field. 
Although he generally stated that he learned about fire ants in medical
school, he did not profess to have any specialized training relating to
insects, the effect of insect bites on health generally, or the effect of
insect bites on geriatric patients.  It
is also important to note that Messmer said he did not review any literature
pertaining to insect bites or the possible effects of insect bites on the
health of patients generally or geriatric patients specifically.  See Helena Chem. Co. v. Wilkins, 47
S.W.3d 486, 500-501 (Tex. 2001) (noting expert=s extensive review
of relevant literature in finding trial court did not abuse its discretion in
admitting expert=s testimony); Wiggs v. All Saints
Health Sys., 124 S.W.3d 407, 413  (Tex. App.CFort Worth 2003,
pet. denied) (discounting medical expert=s review of only
two articles).  Messmer claimed
specialized training and knowledge regarding geriatric patients but not in
regard to insect attacks or the effect of insect attacks on such patients.








Regarding his experience, Messmer
testified that a large percentage of his patients are geriatric.  He also stated that when he worked in South
Carolina in the early eighties, he treated 20 to 30 patients for fire ant bites
but that none of the patients was geriatric, none developed related infections
or went into shock, and none died from the attacks.  He has not treated any patients for fire ant
bites since that time.  Although Messmer
is experienced in the field of geriatrics, he has only slight experience
regarding fire ant bites and no experience dealing with the possible
complications from fire ant bites that he stated may have affected
Smothers.  See Wiggs, 124 S.W.3d
at 412-13 (emphasizing medical expert had only treated one patient for specific
condition involved in lawsuit in holding trial court did not abuse its
discretion in excluding expert=s testimony); State
Farm Lloyds v. Mireles, 63 S.W.3d 491, 499 (Tex. App.CSan Antonio 2001,
no pet.) (ACertainly, if [an expert] is primarily
depending on his experience to support his opinion, he would have to have seen
it more than once.@).








Furthermore, Messmer=s testimony is
replete with references to the speculative nature of his analysis.  He stated that he was hired to speculate on
what may have caused Smothers=s health to
deteriorate, that he gave his best speculation regarding possible causes, and
that he was just offering an opinion on what might have happened.  See Robinson, 923 S.W.2d at 559
(stating that the fact that an opinion was formed for the purpose of litigation
does not automatically render it suspect but does make it more likely to be
biased toward a particular result).  He
said he felt like something catastrophic happened and believed
that the ant bites may have caused it because they were Atemporally
associated.@  He
also stated that he had no evidence that the ant bites actually caused a severe
medical event or that Smothers went into anaphylactic shock or had an allergic
reaction.  He acknowledged that the
treating physicians considered and dismissed the possibility that the ant bites
were infected and that blood cultures were negative for infection.  He further acknowledged that the treating
physicians indicated that the bites healed after three to four days, and her
medical condition had improved before she left the hospital.  He recognized that there was evidence that
Smothers had diabetes, emphysema, a urinary tract infection, and other ailments
that could also have caused her deterioration and that a medicine she was given
for her emphysema, corticosteroids, could also have caused her skin to break
down.  See id. (stating that
expert=s failure to rule
out other causes rendered his opinion Alittle more than
speculation@). 
He stated that urinary tract infections are a Ahigh cause@ for deaths due to
cardiopulmonary arrest (one of the causes of death listed on Smothers=s death
certificate) among nursing home populations. 
He stated that the urinary tract infection was just as likely to have
caused the deterioration of Smothers=s condition as was
the ant attack.  He also admitted the
possibility that the skin breakdown simply progressed in the week between the
last entry in the Gulf Health records and her admission to the hospital and
that the ant bites did not necessarily contribute to this breakdown.  He concluded that the ant bites did not
proximately cause Smothers=s death.[5]

In summary, Messmer=s testimony did
not reveal that he had specialized training or experience relating to insect
bites and their effect on geriatric patients. 
Additionally, his testimony was highly speculative in nature.  Consequently, the trial court did not abuse
its discretion in determining that Bartosh failed in her burden to establish
that Messmer=s testimony was based on a reliable
foundation.  See Robinson, 923
S.W.2d at 556.  Accordingly, Bartosh=s second issue is
overruled.

C. 
Photographs

In her third issue, Bartosh contends that
the trial court erred in excluding photographs taken of Smothers after the fire
ant attack.  At trial, Gulf Health argued
that certain of the photographs were substantially more prejudicial than
probative in nature, citing Rule 403 of the Texas Rules of Evidence.  Tex.
R. Evid. 403.[6]  Bartosh argues that the excluded exhibits
were necessary to show the number of ant bites and, thus, the level of pain
suffered by Smothers.








Bartosh presented a total of thirty-six
photographs for admission, marked as plaintiff=s exhibits 11
through 46.  The trial court admitted
seven photographs, specifically exhibits 11, 12, 14, 15, 19, 42, and 46.  All of the admitted photographs except
exhibit 42 show areas of Smothers=s legs that were
attacked by the fire ants.  Exhibit 42 is
a photograph of Smothers=s face. 
Five of the excluded photographs, exhibits 13, 16, 18, 21, and 39, show
the same areas of ant bites shown in the admitted exhibits.  Two more photographs, exhibits 43 and 44,
show Smothers=s face from the same angle as does exhibit
42.  The trial court did not abuse its
discretion in excluding these photographs because they were clearly cumulative
of photographs that were admitted.  See
Nissan Motor Co., 145 S.W.3d at 144 (holding that the exclusion of
cumulative evidence cannot constitute harmful error).

Fourteen of the excluded photographs,
exhibits 17, 20, 22-24, 27-31, 34, 36, 37, and 40, show a bed sore on Smothers=s right
buttock.  Bartosh acknowledges that this
tissue damage is not a subject of the current lawsuit.  She contends, however, that the photographs
of the spot were still admissible because there were ant bites on Smothers=s buttocks.  It is difficult to tell whether this is true
from the photographs.  The jury heard
testimony from at least two witnesses, including the photographer who took the
photographs, that there were ant bites on Smothers=s buttocks;
therefore, the photographs themselves would have been of limited additional
probative value.  Further, the tissue
affected by the bed sore appears to be considerably more damaged than does the
tissue subject to the ant attack. 
Because it is likely that the bed sores developed while Smothers was in
Gulf Health=s care, the trial court was within its
discretion in determining that the prejudicial effect of these photographs
outweighed their probative value under Rule 403.  See Pack v. Crossroads, Inc., 53
S.W.3d 492, 499-500 (Tex. App.CFort Worth 2001,
pet. denied).

The remaining eight excluded photographs,
exhibits 25, 26, 32, 33, 35, 38, 41, and 45, show additional sores on Smothers=s heel and
arm.  Again, Bartosh acknowledges that
the bed sores are not subjects of the current lawsuit.  She does not assert that these photographs
show any ant bites or were admissible for any other purpose.  Accordingly, she has failed to show that the
trial court abused its discretion in excluding them.  See Tex.
R. App. P. 38.1(h).

The trial court did not abuse its
discretion in excluding the photographs. 
Accordingly, Bartosh=s third issue is
overruled.

D. 
Cumulative Effects of Error








In her fifth issue, Bartosh contends that
the cumulative effects of the trial court=s errors unfairly
limited evidence regarding damages.  In
addition to the arguments raised above, Bartosh additionally asserts under this
issue that the trial court erroneously (1) restricted the time frame regarding
which evidence could be offered; (2) permitted Jason Finney to testify without
having been listed as a witness in pretrial disclosures; and (3) struck
portions of her Fifth Amended Petition. 
Because we have not found that any of the alleged errors raised under
previous issues were either error or harmful error, we need not readdress those
complaints under Bartosh=s cumulative error complaint.  We address each of the additional matters in
turn.

1. 
Timeframe

Bartosh contends that the trial court
erred in restricting the time frame regarding which evidence could be offered
concerning the presence of and treatment for fire ants at the facility.  Specifically, she complains that the court
excluded evidence that (1) Ecolab had treated the property on April 30, 2001,
and (2) a different pest control company was called to treat the property in
September 2001 because ants were found at the facility.

Because Bartosh prevailed on the issue of
Gulf Health=s liability, the exclusion of this
evidence could not be harmful error in relation to that issue.  See Holeman, 989 S.W.2d at 402;
Morriss, 348 S.W.2d at 793-94. 
Further, the two additional treatments for fire ants clearly have no
relevance to the damages elements submitted to the jury: physical pain and
mental anguish, disfigurement, and medical care costs.  Thus, Bartosh has failed in her burden to
prove that the excluded evidence was controlling on a material issue of fact.  See Williams Distrib. Co., 898 S.W.2d at
817; Manon, 142 S.W.3d at 393.[7]

2. 
Jason Finney








Bartosh next asserts that the trial court
erred in permitting Jason Finney to testify without having been listed as a
witness in pretrial disclosures.  Finney
was the Ecolab employee who serviced the Gulf Health account.  Finney was not called to testify prior to the
trial court=s granting of a directed verdict favoring
Ecolab.  Gulf Health called him during
its case-in-chief after Bartosh concluded her case and the trial court released
Ecolab.  Bartosh does not claim that any
of Finney=s testimony related to the damages
elements submitted to the jury.  Indeed,
our review of Finney=s testimony reveals that it was limited to
his treatments at the facility and his communications with Gulf Health
employees.  Because Bartosh prevailed on
the liability issue against Gulf Health and Finney=s testimony did
not relate to any damages issues submitted to the jury, any error in admitting
his testimony would have been harmless.    See Williams Distrib. Co., 898 S.W.2d at
817; Manon, 142 S.W.3d at 393;  Holeman,
989 S.W.2d at 402; Morriss, 348 S.W.2d at 793-94.

3. 
Fifth Amended Petition

Lastly, Bartosh contends that the trial
court erred in striking portions of her Fifth Amended Petition in which she
requested exemplary damages and purported to assert a claim under section
22.04(a) of the Texas Penal Code.  Tex. Pen. Code Ann. ' 22.04(a) (Vernon
2003) (AInjury to a Child,
Elderly Individual, or Disabled Individual@).  The court struck portions of the pleading
when it granted Gulf Health=s special
exceptions.  Gulf Health specially
excepted to Bartosh=s claim for exemplary damages on the basis
that her pleading failed to set forth facts or allegations demonstrating a
right to such damages.  Gulf Health
specially excepted to Bartosh=s pleading under
section 22.04(a) on the basis that it did not state a claim on which relief
could be granted.  Bartosh did not
replead either claim.  On appeal, except
for stating that her Fifth Amended Petition was timely filed, Bartosh provides
no argument and no authority to explain how the trial court erred in striking
the sections of the pleading; thus, she has waived this argument.  Tex.
R. App. P. 38.1(h); Sterling v. Alexander, 99 S.W.3d 793, 799
(Tex. App.CHouston [14th Dist.] 2003, pet. denied).

In summary, Bartosh has failed to
establish that the trial court committed any harmful error, much less multiple
occasions of harmful error.  Accordingly,
her fifth issue is overruled.

 

 








III. 
Directed Verdict

In her fourth issue, Bartosh contends that
the trial court erred in granting a directed verdict favoring Ecolab at the
close of her case-in-chief.  She sued
Ecolab for negligence arising out of its provision of pest control services at
the Gulf Health facility.  Ecolab=s motion for
directed verdict asserted that Bartosh failed to present any evidence that
Ecolab had any legal duty toward Smothers or that it had breached any such
duty.

A trial court may direct a verdict when a
plaintiff fails to present evidence raising a fact issue essential to the
plaintiff=s right of recovery.  Prudential Ins. Co. of Am. v. Fin. Review
Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).   In reviewing the grant of a directed
verdict, we utilize the normal standards for reviewing the legal sufficiency of
the evidence.  City of Keller v.
Wilson, 168 S.W.3d 802, 809-828 (Tex. 2005).

A. 
The Ecolab‑Gulf Health Relationship

In the contract between Ecolab and Gulf Health, Ecolab agreed
to provide periodic services Ain accordance with current pest elimination procedures to
eliminate rats, mice, and cockroaches,@ and it guaranteed that during the
period of service, rats, mice, and cockroaches would not become established on
the premises.  Although the agreement
also states that Ecolab would treat for ants and other insects with the regular
service, any necessary baiting would be at an additional charge.  The agreement expressly excludes coverage for
fire ants unless noted in the ASpecial Instructions@ section.  The only reference to ants in the ASpecial Instructions@ section is the statement:  AAnts not guaranteed.@

The record also contains customer service reports from Ecolab=s visits to the facility.  Most of these include the following language:
AGot Ants?  Try our GroundForce Ant Program.@ 
There was testimony and literature introduced that the GroundForce
Program was designed to provide comprehensive protection against fire ants and
other crawling insects not covered by the basic pest control agreement.  It included investigation, monitoring,
baiting, and spraying.  There was
undisputed testimony that Ecolab recommended this service to Gulf Health on
several occasions and that Gulf Health consistently declined.








The service reports further indicate that on four occasions,
June 22, July 12 and 24, and August 1, the Ecolab technician, Jason Finney,
applied fire ant bait at the Gulf Health facility.  Specifically, the reports identify each
application as a spot treatment on the exterior of the property.

B. 
Duty and Breach

Bartosh contends that there was evidence
that Ecolab had a duty toward Smothers and that it breached that duty.  Ecolab=s primary argument
in its motion for directed verdict was that the contract for pest control
services between itself and Gulf Health expressly excluded treatment or
monitoring for fire ants, except for spot treatments as requested by Gulf
Health.  Ecolab asserted that because it
had no contractual duty to treat or monitor for fire ants at the facility, it
cannot be held responsible for the fire ant attack on Smothers.  Bartosh, however, argues that her negligence
claims are independent of any contractual obligation; therefore, she can
maintain her negligence cause of action. 
She bases this conclusion on four points: (1) she suggests that this is
a negligent activity case; (2) she cites cases from other jurisdictions in
which plaintiffs sought to hold pest control companies liable for damages from
fire ant attacks; (3) she suggests that the fire ant related services provided
by Ecolab were performed negligently; and (4) she contends that Ecolab=s duty stems from
the fact that it had actual and constructive knowledge that fire ants were
present at the facility, and it had superior knowledge and expertise regarding
fire ants as compared to Gulf Health.  We
discuss each contention in turn.








Bartosh first suggests that this is a
negligent activity case.  Her negligence
claim against Ecolab is basically that Ecolab had a duty to discover and
properly treat for fire ants and that it failed to do so, thus allowing the
fire ants to attack Smothers.  As the
Texas Supreme Court has explained, A[r]ecovery on a
negligent activity theory requires that the person have been injured by or as a
contemporaneous result of the activity itself rather than by a condition
created by the activity.@  Timberwalk
Apts., Partners, Inc., v. Cain, 972 S.W.2d 749, 753 (Tex. 1998); Keetch
v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992).[8]  Bartosh clearly does not claim that any
activity of Ecolab directly and contemporaneously harmed Smothers; instead, she
claims that Ecolab=s negligence permitted a condition to
exist (i.e., the presence of fire ants at the facility) that resulted in
harm to Smothers.  This is not a
negligent activity case.

Second, Bartosh cites to several cases from
other jurisdictions in which plaintiffs sought to hold pest control companies
liable for damages due to fire ant attacks, including J.C. Posey Estate v.
Centennial Health Care Properties Corp., 78 F. Supp. 2d 554 (N.D. Miss.
1999); Cook=s Pest Control, Inc. v. Boykin, 807 So.2d 524
(Ala. 2001); and Rein v. Benchmark Construction Co., 865 So.2d 1134
(Miss. 2004).  In J.C. Posey Estate,
a federal district court addressed whether the plaintiff had fraudulently
joined a pest control company in the lawsuit to defeat diversity
jurisdiction.  78 F.Supp.2d at
556-57.  In analyzing this issue, the
court held that the plaintiff did have a viable claim against the company
because there was evidence that it had a responsibility to treat for insects at
the property where the attack occurred.  Id.
at 557.  However, the court provides
little explanation for the basis of this responsibility (although it does
mention the contract between the pest control company and the nursing
home).  Therefore, it is impossible to
compare the facts of that case to those of the case before us.








In Cook=s Pest Control, the main issue
was whether the plaintiff was a third-party beneficiary to the pest control
contract such that he could be held to the arbitration clause in the
contract.  807 So.2d at 526-27.  In determining that the plaintiff was not a
third-party beneficiary, the court vaguely references other theories of
recovery that do not depend on the existence of the contract.  Id. at 527.  However, the court does not explain what
these theories are or on what basis any duty was created for the pest control
company.  Thus, this case is of little
help to Bartosh=s position.

In Rein, the court considered, in a
summary judgment context, whether several companies involved in maintenance at
a nursing home were potentially liable for a fire ant attack on one of the
patients.  865 So.2d at 1136-42.  The court looked primarily at the contracts
between the companies and the nursing home operator to determine what each
company had agreed to do.  One company, a
landscaper, had not agreed to do any treatment for fire ants and, thus, could
not be held liable for the attack, even though it had performed some treatments
of its own volition.  Id. at
1146-47.  Another company had contracted
to perform Aant bed control@ and, thus, was
potentially liable for the ant attack.  Id.
at 1147.  Contrary to Bartosh=s assertion, this
case does not stand for the proposition that a pest control company has a duty
to inspect and treat for fire ants absent a contractual basis for such
duty.  Instead, the case suggests that
the existence of a duty should be ascertained from reviewing what services the
party agreed to perform.








Next, Bartosh contends that when Ecolab
did treat for fire ants at the facility, it then had a duty toward her and it
performed that duty negligently.  In
support of this argument she cites only to statements by her entomology expert,
Dr. Philip Hamman.  As mentioned above,
Ecolab spot-treated with fire ant bait on four occasions:  June 22, July 12 and 24, and August 1.  Hamman stated that he had no criticisms
regarding the first three treatments. 
Although it was disputed at trial, the fourth treatment, on August 1,
just four days before the attack on Smothers, may have been in response to
someone=s having reported
seeing an ant in the room next to Smothers=s room.  Hamman testified on direct examination that
simply treating the exterior of the room, as the service report indicated was
done, would not have been a sufficient response to the alleged ant sighting.  On cross-examination, Hamman further
explained that there should have been an exhaustive visual inspection in the
area where the ant was reportedly seen. 
He emphasized, however, that no treatment should have been undertaken in
the interior until there was a clear identification of a particular pest.  He then acknowledged that he possessed no
information regarding what Jason Finney, the Ecolab technician who serviced
Gulf Health, did in response to the alleged ant report.[9]  He stated that it would be difficult to
criticize the August 1 treatment without knowing on what basis Finney made the
application.  Thus, Hamman=s testimony does
not support Bartosh=s assertion that Ecolab performed fire ant
related services in a negligent manner.[10]  Bartosh cites no other evidence to support
her contention that Ecolab negligently performed such services.[11]  In other words, assuming Ecolab had a duty
toward Smothers when it did provide treatment at the facility, Bartosh has
presented no evidence that it breached that duty.

Lastly, Bartosh contends that Ecolab=s duty stems from
the fact that it had actual and constructive knowledge regarding fire ants at
the facility and superior knowledge and expertise as compared to Gulf Health.  Regarding the knowledge assertion, Bartosh
suggests that Ecolab (1) knew fire ants had made their way to the room next to
Smothers=s room, and (2)
should have known that the premises were infested with fire ants.  Bartosh provides no citation for the
suggestion that Ecolab had knowledge that fire ants were in the adjacent room,
and she cites only to two excluded exhibits[12]
as support for the suggestion that Ecolab should have known that the premises
were infested.[13]  








Regarding the comparison of fire ant
expertise as between Ecolab and Gulf Health, there was evidence that Ecolab is
a professional pest control company and Gulf Health employees had limited
experience or training relating to fire ants; however, Bartosh cites to no
authority that superior expertise alone creates a duty in this situation.  There are certainly situations in which one
party=s superior
knowledge is considered as a factor (perhaps a deciding factor) in determining
whether that party had a duty to act.  See,
e.g., Humble Sand & Gravel, Inc. v. Gomez, 146 S.W.3d 170, 191-92 (Tex.
2004) (considering Asuperior knowledge@ of risk as a
factor in determining scope of duty to warn in products liability case); McIntosh
v. NationsBank, 963 S.W.2d 545, 548 (Tex. App.CHouston [14th
Dist.] 1997, writ ref=d) (considering Asuperior knowledge@ of risk as a
factor in determining scope of duty to warn in premises liability case).  However, the law does not generally impose a
duty on a party simply because it possesses expertise in a field, absent
circumstances requiring the party to put that expertise to use.  Here, the evidence was consistent that it was Gulf Health=s, and not Ecolab=s, responsibility to monitor the
property for fire ants, and that Gulf Health repeatedly refused to purchase the
GroundForce Ant Program, which would have placed a duty on Ecolab to monitor
for fire ants and to train facility staff. 
Hamman, plaintiff=s own expert, acknowledged that if a client refused to
purchase the fire ant program, there was not much a pest control company could
do, and it certainly did not have to provide the service for free.  Accordingly, we find Bartosh=s superior expertise argument to be
without merit under the circumstances of this case.

Bartosh has failed to demonstrate that she
presented evidence raising a fact issue essential to her right of
recovery.  See Fin. Review Servs.,
29 S.W.3d at 77.  The trial court did not
err in granting the directed verdict. 
Bartosh=s fourth issue is overruled.

IV. 
Cross-Point








In its sole cross-point, Gulf Health asserts
that because it has already tendered payment of the damages to Bartosh, this
court should not award her any additional post-judgment interest after the date
of tender, citing Tex. Fin. Code Ann.
' 304.005 (Vernon Supp.
2004-05), et al.  However, this
court does not make any award to Bartosh. 
We simply affirm the trial court=s judgment.  Gulf Health does not allege any error in the
trial court=s judgment.  Accordingly, we dismiss its cross-point as
moot.

The trial court=s judgment is
affirmed.

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Opinion filed October 11, 2005.

Panel
consists of Chief Justice Hedges, Justice Anderson, and Senior Justice Mirabal.[14]











[1]  In issue five,
Bartosh claims, among other things, that the trial court erred in striking
portions of her Fifth Amended Petition, including those requesting exemplary
damages.  As discussed in detail below,
Bartosh fails to demonstrate that the court erred in striking those sections of
the pleading.





[2]  The expressly
nonexclusive factors listed in Robinson are as follows:

 

(1) the
extent to which the theory has been or can be tested;

(2) the
extent to which the technique relies upon the subjective interpretation of the
expert;

(3)
whether the theory has been subjected to peer review and/or publication;

(4) the
technique=s potential rate of error;

(5)
whether the underlying theory or technique has been generally accepted as valid
by the relevant scientific community; and

(6) the
non‑judicial uses which have been made of the theory or technique.

923
S.W.2d at 557.





[3]  But cf.
Coastal Tankships, U.S.A., Inc. v. Anderson, 87 S.W.3d 591, 600-05 (Tex.
App.CHouston [1st Dist.] 2002, pet. denied) (en banc)
(holding that medical causation testimony fell outside realm of Ahard science@ and
applying factors from Nenno v. State, 970 S.W.2d 549 (Tex. Crim. App.
1998), overruled on other grounds by State v. Terrazas, 4 S.W.3d 720,
727 (Tex. Crim. App. 1999), for determining reliability of expert testimony in
the Asoft@ sciences).  The
Nenno court pronounced that in addressing fields of study outside the
hard sciences, the appropriate questions are: (1) whether the field of
expertise is a legitimate one, (2) whether the subject matter of the expert=s testimony is within the scope of that field, and (3)
whether the expert=s testimony properly relies upon and utilizes the
principles involved in the field.  970
S.W.2d at 561.  Neither the Fourteenth
Court of Appeals nor the Texas Supreme Court has adopted the Nenno
analysis for use in civil cases, and we do not see the need to do so in the
present case.





[4]  Messmer
further asserted that Gulf Health violated the applicable standard of care by
allowing Smothers to be attacked by fire ants. 
However, Bartosh=s medical malpractice claim was eliminated by summary
judgment, and she does not claim that this assertion is relevant to her
premises liability claim that went to the jury.





[5]  Messmer may
not have been perfectly clear on the legal definition of proximate cause.  See generally IHS Cedars Treatment Ctr. of
Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798-99 (Tex. 2004) (defining
proximate cause).





[6]  Rule 403
states as follows:

 

Although
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence. 





[7]  Bartosh does
not address any of her complaints under issue five in relation to Ecolab.





[8]  For example,
in Keetch, a Kroger employee sprayed plants approximately thirty minutes
before the plaintiff slipped on the floor in the area where spraying had
occurred.  845 S.W.2d at 264.  The court explained that the plaintiff may
have been injured by a condition created by the activity but was not directly
injured by the activity (spraying) itself; thus, the facts did not support a
negligent activity claim.  Id.





[9]  Finney did not
testify at trial until after the directed verdict was granted, and he
apparently was not deposed prior to trial.





[10]  Furthermore,
the evidence was consistent that it was Gulf Health, and not Ecolab, that
undertook to monitor the property for fire ants, and that Gulf Health had
repeatedly refused to purchase the Ecolab GroundForce Ant Program, which would
have included monitoring.





[11]  Bartosh
additionally cites to testimony by Finney that if he saw a problem at the
facility he could treat at his discretion. 
However, this testimony came after the close of plaintiff=s case and the grant of directed verdict.  We therefore do not consider it in assessing
the propriety of the directed verdict.





[12]  The excluded
exhibits are a time sheet and an Aemergency
waiver@ form from a different pest control company that
treated the facility in September 2001, over a month after the attack on
Smothers.  Interestingly, the form notes
only that there was an Aimminent infestation@ and
neither document references any current or former infestation.





[13]  In her
statement of facts, Bartosh asserts that Hamman concluded that there was an
infestation at the facility based on three things: (1) the indication that ants
may have been in the adjacent room within four days of the attack; (2) the
prior exterior treatments for fire ants; and (3) the attack on Smothers.  Obviously, Ecolab could not have known about
the attack on Smothers prior to the attack, and thus would not have had known
of this supposed evidence of an infestation.





[14]  Senior Justice
Margaret G. Mirabal sitting by assignment.