**Opinion filed July 26, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00341-CV
_____

## IN THE MATTER OF THE ESTATE OF
## ESTHER ABELL DENTON, DECEASED

**On Appeal from the County Court at Law
Midland County, Texas
Trial Court Cause No. P14,779**

## M E M O R A N D U M   O P I N I O N

Douglas A. Denton appeals the decision of the trial court to end the administration of his mother's estate. In four issues,[1] he argues that the trial court abused its discretion when it approved the administrator's amended and restated inventory, when it approved the administrator's supplemental application for distribution and for closing of estate, and when it refused to hear testimony from Appellee and Appellee's counsel. We affirm.

### *Background Facts*

Esther Abell Denton died on January 17, 2006. Appellant is her son and the primary beneficiary of her estate. He is the only beneficiary who has yet to accept the bequests of the

---

[1]Appellant's brief contains a fifth issue concerning the trial court's approval of the accounting. However, this issue is not mentioned in the brief other than in the table of contents and statement of facts. No argument was presented on this issue, and no case law was cited. Appellant has waived this portion of his complaint for failure to brief the issue as required by TEX. R. APP. P. 38.1(i). *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 410 (Tex. 1997) (ordinarily, failure to brief an argument waives error on appeal).

estate. The decedent's Last Will and Testament made a specific bequest of her real property, including mineral interests, in equal shares to Appellant and Jo Denton Tuck. Tuck is the decedent's stepdaughter. The residuary estate was bequeathed to the Esther Denton Trust for Douglas A. Denton, of which Appellant and Tuck were to be named as cotrustees. Tuck declined to serve as cotrustee.

The will was admitted to probate on February 24, 2006. The will named four coexecutors: Appellant, Tuck, Bill Wiggins, and Karen Wiggins Dowler. The application to probate the will was initially filed on behalf of all four coexecutors, but several weeks later, an amended application was filed by Tuck, Wiggins, and Dowler in which they requested that Wiggins alone be appointed administrator with will annexed. The application cited conflict between Appellant and the other executors, their frequent inability to locate Appellant, and the urgent need for immediate administration of the estate as reasons for the request to appoint a single administrator. The trial court found that it was in the best interest of the estate to have an administration supervised by the court. Wiggins, the appellee in this case, was appointed administrator with will annexed.

The original inventory of assets was filed on April 2, 2007, and was approved by the trial court. In August of that year, Appellee filed an application to distribute the oil and gas properties in equal shares to Appellant and Tuck. In September, Appellee amended the application to request distribution of Tuck's share only; Appellant did not wish to receive his share of the properties at that time.

On November 2, 2009, almost four years after administration of the estate had begun, Appellee filed his application to distribute and to close the estate. He stated in the application that all debts had been paid, the federal estate tax return had been filed, and the Internal Revenue Service closing letter had been issued. The application also informed the trial court that not only had Appellant refused distribution of his share of the oil and gas interests, but he had refused to cash checks from the administrator in the amount of $578,629.54.

On December 3, 2009, Appellant filed an objection to the original inventory that the trial court had approved nearly three years earlier on the grounds that the original inventory omitted certain mineral interests and contained errors. He requested that Appellee prepare and file an amended inventory. Based on the same grounds, Appellant also filed objections to Appellee's annual account for the period of February 1, 2009, to January 31, 2010.

On August 10, 2010, Appellee filed an amended inventory and an amended 2009 account. Appellee made the corrections cited by Appellant, adding to both documents several mineral interests, an overriding royalty interest, and some New Mexico oil and gas properties. Appellant filed a list of fourteen objections to the amended inventory. Appellant also objected to Appellee's application to distribute overriding royalty units to Appellant and Tuck on the ground that Appellee did not have personal knowledge that the decedent had owned the interest. In addition to pointing out alleged flaws or omissions in the inventory, Appellant objected that the inventory was "not based on the personal knowledge of the Administrator" and that "the Administrator has no knowledge of oil and gas matters and is incompetent to make a reliable statement as to what interests are in the Estate."

Appellee filed a supplemental application to distribute and to close the estate in which he included the amounts of additional checks that Appellant had refused to cash. The application, dated September 17, 2010, noted that the current amount of uncashed checks was $698,512.33, but was continuing to increase. A hearing on Appellee's application for distribution and closing was set for October 20, 2010. Two days before the hearing, Appellant filed objections to the application, alleging that the inventories contained numerous errors and that the trial court had no jurisdiction as to the residuary trust provided by the will. Appellant also objected to being named trustee of the trust.

During the hearing, the trial court questioned Appellee's counsel about the efforts that were made to locate estate assets. Appellee's counsel assured the court that Appellee had exercised diligence in researching and inventorying the assets of the estate. The final inventory, to their knowledge, was accurate. Appellant declined to testify several times. However, Appellant acted as his own lawyer and made arguments, suggestions, and observations to the court. After Appellant described his efforts to augment and correct Appellee's inventory of mineral assets, the court remarked that Appellant is "extremely capable of researching these, seeking them out, . . . [and] determin[ing] if they are, indeed, interests that still remain in the Denton name and subject to being passed on to [him]."

Appellant asked that the estate not be closed and that Appellee be compelled to correct and complete the inventory. However, Appellant also stated that, because Appellee lacked knowledge of oil and gas interests, Appellee was probably not capable of "mak[ing] a credible statement about what oil and gas assets are in [the] estate." Appellee's counsel explained that

3

the expense of keeping the estate in administration for over five years, as well as the cost of investigating assets, was borne by the residual estate and that this had caused the residual trust to decline in value. As Appellant is the primary beneficiary of the trust, Appellee argued that it is in Appellant's interest to close the administration. Appellee's counsel stated that Appellant was attempting to use the estate as a "de facto trust" instead of managing his own assets. Appellant expressed his belief that the title status of each asset needed to be resolved, that Appellee was "being paid to do [this]," and that it was "[Appellee's] job to do this now and not [Appellant's] job to do later." Appellee's counsel and the trial court attempted to explain to Appellant that the estate was attempting to turn over ownership of the assets to Appellant so that he could "go forth and manage his own assets."

The trial court did not think that it was its obligation to instruct Appellee to continue researching items at the estate's expense. The trial court told Appellant that, if certain assets belonging to Appellant by right were not reflected in the inventory, the assets could still be collected and utilized by Appellant after the estate was closed. The trial court went on to say that identifying flaws in the inventory is not an attack on "the estate's essential purpose, which is to advise you of everything that they have been able to ascertain through reasonable methods as to be included in Esther's estate." However, the court invited Appellant to testify about the alleged errors in the inventory as well as anything that could indicate malfeasance on the part of the administrator. Appellant declined.

Appellant requested that Appellee, Pat Long Weaver (Appellee's trial counsel), and the trial judge all be called to testify. These requests were denied by the court. The court then signed the order distributing and closing the estate.

*Trial Court's Refusal of Testimony*

In his first two issues, Appellant complains that the trial court abused its discretion by refusing to hear testimony from Appellee and Weaver. As a general rule, the decision to admit or exclude testimony of a witness is subject to an abuse of discretion standard of review. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *Bartosh v. Gulf Health Care Center-Galveston*, 178 S.W.3d 434, 442–43 (Tex. App.—Houston [14th Dist.] 2005, no pet.). However, an appellate court does not reach the question of whether evidence was erroneously excluded unless the complaint has first been preserved for review. *See McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 187 (Tex. 1984). To preserve error on appeal, a

4

party must present to the trial court a timely request, motion, or objection; state the specific grounds therefore; and obtain a ruling that appears in the record. TEX. R. APP. P. 33.1(a); *Wal-Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999). To challenge an exclusion of evidence by the trial court on appeal, the complaining party must present the excluded evidence to the trial court by offer of proof or bill of exception. TEX. R. EVID. 103(a), (b); TEX. R. APP. P. 33.2; *Langley v. Comm'n for Lawyer Discipline*, 191 S.W.3d 913, 915 (Tex. App.—Dallas 2006, no pet.) (concluding appellant failed to preserve error when no offer of proof or bill of exception was made).

An offer of proof consists of making the substance of the evidence known to the court and shall be made as soon as practicable after the ruling excluding the evidence. Rule 103(a), (b). The offer of proof allows a trial court to reconsider its ruling in light of the actual evidence. *Smith v. Smith*, 143 S.W.3d 206, 211 (Tex. App.—Waco 2004, no pet.). When there is no offer of proof made before the trial court, the party must introduce the excluded testimony into the record by a formal bill of exception. Rule 33.2; *Sw. Country Enters., Inc. v. Lucky Lady Oil Co.*, 991 S.W.2d 490, 494–95 (Tex. App.—Fort Worth 1999, pet. denied).

Appellant did not state a basis for his objection to the trial court's refusal to allow the testimony of either Weaver or Appellee. Appellant also did not make an offer of proof or make a bill of exception as to either of the potential witnesses. He did not make the substance of the evidence he hoped to elicit known to the trial court. He merely made known the topics of his proposed questions for Appellee. Appellant stated that he wished to ask Appellee about his efforts to search for assets, his personal knowledge of the inventory, and his knowledge of oil and gas interests in general and also whether he considered an alleged error in Appellant's father's estate (administered in the 1970s) to be "significant" in the administration of this estate. When the trial court asked Appellant several times to testify about those topics himself, he declined. As for Weaver, Appellant said only that he would like to take her testimony. Appellant has not preserved error for either of his first two issues, and they are overruled.

### Sufficiency of the Evidence

In his third and fourth issues, Appellant argues that the trial court abused its discretion when it approved the amended inventory and the application to close the estate. Appellant argues that the evidence was legally and factually insufficient as to both.

*Standard of Review*

We are unable to locate, and neither party brings to our attention, any Texas cases that set forth the applicable standard of review of a trial court's orders under Section 255 or Section 404 of the Texas Probate Code. TEX. PROB. CODE ANN. §§ 255, 404 (West 2003). However, Texas courts have applied the abuse of discretion standard to review a trial court's actions under various other Probate Code sections. *See Eastland v. Eastland*, 273 S.W.3d 815, 820 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (suitability of executor and determination regarding necessity for administration); *Estate of Wolfe*, 268 S.W.3d 780 (Tex. App.—Fort Worth 2008, no pet.) (approval of application for family allowance); *In re Estate of Walker*, 250 S.W.3d 212, 214 (Tex. App.—Dallas 2008, pet. denied) (denying a request for corrected inventory); *In re Estate of Stanton*, 202 S.W.3d 205, 209 (Tex. App.—Tyler 2005, no pet.) (determination of suitability of executor or administrator); *In re Estate of Clark*, 198 S.W.3d 273, 275 (Tex. App.—Dallas 2006, pet. denied) (removal of a personal representative). In *Estate of Walker*, the court found that a determination of a complaint under Section 258 of the Probate Code is committed to the trial court's discretion because the trial court was empowered by the statute to order a new inventory if the court was "satisfied" that the inventory or appraisement was erroneous. *Walker*, 250 S.W.3d at 214. Similarly, Section 255 and Section 404 each empower the trial court respectively to "examine and approve, or disapprove" the inventory, and to close the estate "when there is no further need for administration." By analogy, we hold that abuse of discretion is the appropriate standard of review in this case as well.

To determine whether a court abused its discretion, we must decide whether the court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Merely because a court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id*. An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

The trial court's power to approve an inventory and accounting is governed by Section 255 of the Texas Probate Code. The Code requires the personal representative of an estate to file with the probate court a verified, full, and detailed inventory of "all the property of

such estate which has come to the representative's possession or knowledge." TEX. PROB. CODE ANN. § 250 (West Supp. 2011). Once the inventory is filed, the probate court must examine it and either approve or disapprove it. *Id*. § 255. When approved by the court, an inventory constitutes the inventory of the estate for all purposes referred to in the Texas Probate Code. *Id.* § 250. Section 233 of the Code asks that the personal representative of the estate exercise "ordinary diligence" in collecting the property of the estate. *Id.* § 233.

The trial court did not abuse its discretion in approving the amended inventory. After the initial inventory was filed, Appellant provided input as to twenty omitted oil and gas assets. Appellee took this input, conducted additional research, and filed an amended inventory. At the October 20, 2010 hearing, Appellee submitted an affidavit in which he stated that the list of assets was complete to his knowledge. Appellee's attorney told the trial court about the efforts that had gone into the search and averred that this was the complete list of assets to the best of Appellee's knowledge and research. Because this was a dependent administration, the trial court had observed the effort and expense that went into researching and preparing the inventory over the years. Every expense had to be approved by the court, and there is, thus, an extensive record of the administrator's diligence in completing the inventory. Several times at the hearing, Appellant was given the opportunity to testify or otherwise present evidence to support his objections to the inventory. He declined to do so. Therefore, we cannot say that the trial court abused its discretion in approving the inventory. The evidence was sufficient that the administrator catalogued every asset that came to his possession or knowledge. Appellant's third issue is overruled.

The trial court did not abuse its discretion by approving Appellee's application for closure of the estate. Closure of an estate is appropriate when "all the debts known to exist against the estate of a deceased person have been paid, or when they have been paid so far as the assets in the hands of an administrator or executor of such estate will permit, and when there is no further need for administration." Section 404. Appellant makes no allegation that the estate's debts remain unpaid. The application for closure of the estate asserts that all the debts of the estate have been paid, the federal estate tax return has been filed, and the Internal Revenue Service has accepted the return without audit and issued its closing letter.

Though Appellant made unsworn claims alleging inadequacies in the inventory, he gave the trial court no explanation why this necessitated a need for continued administration.

Moreover, he presented no evidence that the estate needed to remain in administration. Appellant was the only remaining beneficiary of the estate who had not accepted distribution of his share of the assets. Appellant refused to testify about his objections to closing the estate. Appellee argued at the hearing that closing the estate would do no harm and would not prevent Appellant from tracking down additional oil and gas interests on his own. Appellant presented no reason why he could not do this; to the contrary, he convinced the trial court that he was extremely capable in the oil and gas arena. Keeping the estate open would be a costly endeavor, approximately $7,000 a month according to the application for closing. The application also states that the residuary estate was "being depleted because of the stalemate with [Appellant] in distributing and closing the estate." As Appellee explained to the court, the efforts expended over five years of administration had been borne solely by the residuary trust and had transformed the trust into a declining fund. The court had ample evidence that Appellee diligently pursued the property of the estate. The evidence was sufficient to show that the debts of the estate had been paid and that there was no further need for administration. The trial court did not abuse its discretion. Appellant's fourth issue is overruled.

The order of the trial court is affirmed.


ERIC KALENAK
JUSTICE


July 26, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.